# CHARLESTON.

ELLA PROUDFOOT *v.* POCAHONTAS TRANSPORTATION COMPANY

(No. 5480)

Submitted January 26, 1926.   Decided February 2, 1926.

1.  INTERROGATORIES—*Special Interrogatories to Jury Should be Submitted Before Argument of Counsel.*

    Special interrogatories to the jury should be submitted before argument of counsel. (p. 737.)

2.  VENUE—*As a General Rule Granting of Change of Venue Discretionary With Trial Court, Subject to Review Only in Cases of Abuse.*

    As a general rule the granting of a change of venue is discretionary with the trial court, subject to review only in cases of abuse. (p. 736.)

Error to Circuit Court, McDowell County.

Action in Trespass on the case, brought by Ella Proudfoot against Pocahontas Transportation Company. Judgment for plaintiff, and defendant prosecutes error.

*Affirmed.*

*Sanders, Crockett, Fox & Sanders,* for plaintiff in error.
*Strother, Sale, Curd & Tucker,* for defendant in error.

LITZ, PRESIDENT:

This action, in trespass on the case, was brought to recover damages for personal injuries sustained by the plaintiff, Ella

Proudfoot, while a passenger on the motor bus of defendant, a corporation. To the judgment upon a verdict in favor of plaintiff for $7,000.00 the defendant prosecutes error.

Acting under a franchise or certificate of convenience from the State road commission, the defendant operates between fixed termini in McDowell county a number of motor buses for the carriage of passengers. On August 25, 1924, the plaintiff boarded one of its busses at Welch for passage east to Vivian, a distance of about eight miles. The bus was provided with seats for sixteen passengers. On leaving Welch the seats were filled and eight or ten persons occupied all available standing room. The bus, still crowded, after traveling east seven miles from Welch plunged over a steep embankment, causing serious injury to the plaintiff and other passengers, and destruction of the machine.

For several hundred feet east and west of the scene of the wreck the road, constructed by means of a deep side cut along the face of the mountain, ascends eastwardly a grade between practically perpendicular hillside on the left and steep embankment to the right. In the center of the road is a nine foot concrete strip, with a dirt surface on either side several feet wide. To the left of the concrete the dirt slopes to the hillside, forming a drain or ditch.

According to the evidence for plaintiff, the driver was unable, before reaching the point of the accident, properly to regulate the speed of the bus down grade by the use of the service brake. Immediately before the wreck, in an attempt to pass a truck moving in the same direction, the bus was driven sharply to the left into the ditch, then violently back across the road, causing the driver to lose control of the machine. Continuing a short distance, apparently unguided, it went over the embankment.

The driver of the bus, who was only twenty years of age at the time of the trial, February 26, 1925, testified that he passed the truck without difficulty and came back into the center of the road with all wheels of his machine on the concrete; that after proceeding in this manner for forty or fifty feet, without cause or warning the spindle arm of the steering gear broke and before he could stop by the use of the

service and emergency brakes, the car went over the embankment. The defendant introduced the testimony of several passengers to support the claim of the driver that the passage of the bus around the truck was uneventful. It also presented as a witness one, R. G. Edgerton, who says that in his opinion the breaking of the spindle arm of the steering gear resulted from crystalization or hardening of the metal due to vibration and continued use, causing a movement of the molecules in the metal to the point of greatest vibration. He does not state, however, that the metal at the point of breakage was in fact crystalized. Assuming that the broken part had been weakened by crystalization of the metal, and that it broke before the car left the road, is it not more probable that the breakage was due to unusual strain on the steering gear and improper operation, rather than that the part snapped, without cause as the driver contends, while he was driving the bus on straight road over smooth concrete surface at a moderate rate of speed?

The plaintiff also asserts that the defendant was guilty of negligence in using a defective or insufficient service brake; and that had this brake been in good condition, the car could have been stopped by the use of ordinary effort, had the steering gear broken, as claimed by the driver, while the machine was being carefully driven over the smooth concrete surface. This contention is based upon the reputed statement of the driver while the car was leaving Welch that the service brake was defective; the alleged ineffectiveness of the brake properly to regulate the speed of the car while going down grade; and the inability of the driver to stop at the time of the accident. It was shown by witnesses for the plaintiff that the car, traveling at the rate of speed claimed by the driver, could have been stopped within a distance of from two to four feet; and by the witness Edgerton, for the defendant, that it could have been stopped within five or six feet.

The driver testified that the service brake was in good condition, and also denied the statement, imputed to him, that it was defective. Another witness for the defendant says that he found, upon an examination a day or two after the wreck, that the lining of the service brake was in good condition.

The other parts as well as the lining must be intact and properly adjusted to render the brake effective. The driver makes no denial of the charge that the brake proved ineffective down grade.

The following are assigned as grounds of error:

(1)    Denial of defendant's motion for a change of venue;

(2)    Admission over the objection of defendant of improper evidence;

(3)    Refusal of certain special interrogatories to the jury;

(4)    Refusal of the peremptory instruction in favor of the defendant; and

(5)    Alleged excessiveness of the verdict.

In support of the motion for a change of venue the defendant filed the affidavit of its president, Carroll R. Woods, stating that it had instituted an injunction proceeding against a large number of taxi drivers in McDowell county for alleged violation of its franchise rights, and, pending an appeal therein to this Court, had protested to the State road commission against the further granting of taxi license to any of the defendants in said suit; that the said controversy between the defendant and the taxi drivers had created an unfavorable sentiment in the community against the defendant, numerous citizens, including some of the county offiials, having stated at public meetings and in a written petition addressed to the road commission that the defendant was treating the taxi drivers unfairly. The affidavit further charged that on account of the feeling thus engendered against the defendant a fair and impartial trial of the case could not be had in McDowell county. Appended to this affidavit are the sworn statements of nine persons, some or all of whom were in the employ of the defendant, each to the effect that the "affiant believes the statements and allegations contained in the affidavit of Carroll R. Woods are true, and that a fair trial of this case cannot be had in McDowell county". The plaintiff filed sixty-four affidavits of representative citizens of the county, stating in effect that the feeling, if any, against the defendant was confined to a small number of persons, and that in the opinion of affiants a fair and impartial trial of the case could be secured in the county. It does not appear that

the slightest difficulty was encountered in selecting the jury. Considering these facts, the large population of McDowell county, and that none of the persons making affidavits for the defendant is shown to have been disinterested or a citizen of the county, we cannot say that the trial court committed reversible error by overruling the motion. As a general rule the granting of a change of venue is discretionary with the trial court, subject to review only in cases of abuse. As suggested by Judge POFFENBARGER in the case of *State* v. *Shepherd*, 49 W. Va. 582, in criminal cases this rule may be affected by Section 14, Article III of the State Constitution.

The point of error based upon the admission of improper evidence cannot be considered, the evidence complained of not having been made the subject of special bills of exceptions, nor particularly pointed out in the grounds of the motion for a new trial. *Guyandotte Coal Co.* v. *Virginia Electric & Machinery Works*, 94 W. Va. 300; *Moorefield* v. *Lewis*, 96 W. Va. 112; *Trippet* v. *Monongahela etc. Company*, 100 W. Va. 319, 130 S. E. 483.

After the case had been argued, the defendant requested the submission of certain special interrogatories to the jury, whereupon counsel for plaintiff objected, but offered to withdraw the objection if counsel for the defendant would consent to an argument on the interrogatories. This proposition was rejected by counsel for defendant, who now assert that the trial court was compelled to receive and submit the interrogatories after argument. The statute contemplates the submission before argument of instructions for the guidance of the jury in considering the evidence, and we think proper practice dictates a like rule with respect to special interrogatories. Discussing the question, in *McKelvey* v. *C. & O. Ry. Co.*, 35 W. Va. 500, Judge BRANNON says: "Doubtless these interrogatories would better have been submitted before argument; doubtless a rule requiring it would be advisable. Then counsel could present to the jury the evidence bearing on each question".

The peremptory instruction in favor of the defendant was properly refused. The issues involving defective brake and negligent operation were rightly submitted to the jury.

The defendant has little to say on the assignment of error relating to the amount of the verdict. The plaintiff sustained a broken arm near the shoulder joint, severed muscles of the hip and other serious and permanent injuries. She remained in the hospital ten weeks and lost in salary and medical expenses more than $1,100.00. This Court would not be justified in setting aside the verdict as excessive, under these circumstances.

The judgment of the circuit court will be

*Affirmed.*