GLADYS E. STEWART *v.* RALEIGH COUNTY BANK

(No. 8812)

Submitted February 21, 1939. Decided March 23, 1939.

*Lilly & Lilly* and *Robert E. White,* for plaintiff in error.

*Harry Scherr, J. W. Fitchett* and *Ashworth & Sanders,* for defendant in error.

Fox, PRESIDENT:

This writ of error involves the ruling of the circuit court of Cabell County in setting aside a verdict in favor of the plaintiff.

The plaintiff sues to recover damages growing out of injuries sustained by her in escaping from her apartment located in a two-story building owned by the defendant, the second floor of which was operated as an apartment house. The building was on fire, and all ordinary means of exit were cut off, making it necessary for the plaintiff to escape from an inside apartment into a court which was in fact a sky-light for a room on the ground floor. The glass of the sky-light broke and she fell to the floor below and sustained serious injuries. The plaintiff rented her apartment in October, 1935, and the fire occurred on January 26, 1936, about two o'clock in the morning of that day.

The action is based upon the alleged common law liability of the landlord. The amended declaration, which includes all of the allegations of the original, and some additions, alleges first the ownership of the building by the defendant, and the letting of a portion thereof to the plaintiff, and then avers that prior to the date of the fire, it became and was the duty of the defendant (1) to construct, maintain and repair the said building out of proper, suitable and substantial material so as not to constitute the same a fire trap or fire hazard to the occu-

pants; (2) erect and maintain safe and suitable exits from the second floor apartments such as could be used in case of fire; (3) use due, proper and reasonable care to equip and maintain, on the second floor of said building, proper and suitable equipment to extinguish or prevent the spread of fire; (4) in the event of fire and knowledge thereof, to warn tenants occupying apartments; and (5) warn tenants of alleged flimsy construction of walls and partitions. She then averred the breach of each of the said alleged duties, and that by reason thereof she sustained the injuries in the declaration described.

The following salient facts may be deduced from the evidence. The building in question, located at the corner of Fourth Avenue and Sixteenth Street in the City of Huntington, was erected in 1925 by the Real Estate Securities Company, acquired by the defendant in 1928, and operated by it since that date; the building was in charge of Bernard Carter and his wife, agents of the defendant, who lived in one of the apartments; the outer walls of the building were of brick, and other construction partly of concrete and steel; the floors were of "cork tile" and wood; the outer walls were plastered inside, and some of the apartment walls were of plaster; the surface of the ceilings, partitions and walls of the second floor other than the outer walls was for the most part of composition material, either beaver-board or celatex, depending on conflicting evidence; the apartments were equipped with gas steam radiators, installed at the time the building was erected; there were three exits, each leading from the hallways on the second floor, one leading to Fourth Avenue, one to Sixteenth Street, and one to an alley in the rear of the building; the construction of the building and the exits was not changed during plaintiff's occupancy of her apartment; there is no evidence that her attention was called to the manner of construction or the materials which entered into the same, or the exits provided; in the construction of the building, niches were provided in the walls of the second

floor corridors for the placing of chemical fire extinguishers, the number being uncertain but only one of such extinguishers was on the floor at the time of the fire; six fire hose attached to the city water supply were installed in the second floor corridors and were in place at the time of the fire; attempts to use the fire extinguisher and the hose nearest the room where the fire originated were made, but without effect either in putting out the fire or retarding its progress, and the jury would have been warranted, under the evidence, in finding that the fire extinguisher was not in working order, and that no water would pass through the hose attempted to be used, although Carter, who turned the valve, says he felt the surge of water in the hose; no explanation of the apparent inefficiency of these fire preventative agencies is given, and it seems clear that care and upkeep of the fire extinguishers had been neglected; according to the statements of the janitor, he tested the hose about twice a month and fixed the time of the last test before the fire just after Christmas in 1935, or in January, 1936, presumably early in the month; occupants of the apartments testify that they did not at any time see a testing of the hose by anyone. The plaintiff was not warned of the fire by the Carters or by any other person in time to escape by the usual exits; two witnesses testify that Mrs. Carter stated to them that there was no fire at a time when she knew the fire was raging, but these statements are denied, the point of this testimony being that but for the statements the plaintiff might have been warned by the parties to whom the statements were allegedly made. There is evidence that the fire extinguishers and the water hose were installed "through an abundance of precaution", and that either, if in working order, should have extinguished a fire discovered in its early stages. However, the clearest statement on that point, referring to this fire, is that of witness Wolcott who, testifying as to the use of the fire extinguishers and water hose, says:

"There might have been a possible chance we could have stopped the fire and held it down to a

certain degree if we had had water or had at least two fire extinguishers, that is the fire when I first got to it, it might have been possible to put it out, I don't know."

The case was permitted to go to the jury on this evidence and upon the court's instructions to the following effect: (1) The defendant was not required to install and maintain any equipment on the second floor of the building to extinguish or prevent the spread of fire, but if they did so, and the same was inefficient, there could be no recovery by the plaintiff; (2) there was no duty on the part of the defendant to install or maintain exits other than those shown to exist; (3) the defendant was under no duty to change the construction of the building, and that if the building was maintained in as safe condition as that existing at the time the plaintiff leased her apartment, she could not recover; (4) that the agents of the defendant were under no duty to warn the plaintiff of the fire and that their failure to do so, even after knowledge of the fire, would not justify a recovery on the part of the plaintiff. There were no specific objections to the instructions, or any one of them, as required by paragraph (e) of Rule VI, 116 W. Va. lxiii, but the verdict being in favor of the plaintiff, this omission is not important.

After argument of counsel had been completed, the court, at the instance of the defendant, propounded to the jury two special interrogatories to be answered by the jury if they found for the plaintiff, the first of which being: "Was the second floor of the apartment building, including the walls and partitions, at the time of the fire, in the same condition it was in or appeared to be in at the time the plaintiff rented her apartment in September or October, 1935?", the answer to which was "No." The second was: "If your answer to the foregoing question should be 'No', in what respect was said second floor, including the walls and partitions, not in the same condition at the time of the fire that they were in or appeared to be in at the time the plaintiff rented her apartment

on the date above mentioned?", to which the following answer was given: "According to proof of defense witness, Herb Jones, Janitor, water was in hose and tested at least twice a month thus covering time of leasing of apartment by plaintiff. Proof that no water was in hose at time of fire established by preponderance of evidence." The answers to these interrogatories show clearly a finding by the jury that the building was not in as safe condition as that existing at the time the plaintiff leased her apartment, for the specific reason that there was no water in the hose on the second floor of the building at the time of the fire. The defendant says that, inasmuch as the court instructed the jury that it was under no duty to install and maintain fire prevention equipment, the answer to the second interrogatory demonstrates that the verdict of the jury was in the face of and contrary to the court's instruction, and that it could, under the circumstances, do nothing less than set it aside. Waiving for the present this contention, we do not approve of the manner in which these interrogatories were given. In the first place, juries should not be called upon to specify the grounds on which their verdict is founded. The office of an interrogatory is to ascertain the jury's finding on a particular point of the case, not the argument on that point, or the reason for the finding. Then, interrogatories should be submitted along with the instructions, and counsel should be permitted to discuss and explain them. *Proudfoot* v. *Transportation Co.*, 100 W. Va. 733, 132 S. E. 746.

Notwithstanding imperfections in the instructions to which attention will later be called, and our disapproval of the form of the interrogatories and the manner in which they were propounded, we do not think the plaintiff was entitled to recover on the theories on which the amended declaration is based. In the absence of any statute imposing upon a landlord any of the duties alleged, they can only rest on the common law, and we have not been shown that the breach of any of these alleged duties would entitle the plaintiff to recover at

common law. The rule announced by this court in *Marsh v. Riley,* 118 W. Va. 52, 188 S. E. 748, and *Lowe v. Community Investment Co.,* 119 W. Va. 663, 196 S. E. 490, applies to negligence as to some part of the leased premises remaining within the control of the lessor, the maintenance of which in a reasonable state of repair is a plain common law duty, and cannot be said to apply to the maintenance of a service not required by statute or by the common law. For example, the installation and maintenance of fire escapes is not a common law duty where the building is properly constructed for its intended use and purpose, (9 Am. Jur. 227; *Schmalzreid v. White,* 97 Tenn. 36, 36 S. W. 393, 32 L. R. A. 782; *Commonwealth v. Madison,* 269 Ky. 571, 108 S. W. (2d) 519, and it logically follows that the same rule applies to fire equipment. In the case of *Pennyroyal Co. v. Jorden,* 229 Ky. 693, 17 S. W. (2d) 720, 66 A. L. R. 1390, it was held that "There is no common law duty resting on landlord to equip or maintain building with auxiliary fire apparatus", and in that case, as here, fire hose had been installed, had been neglected and failed to operate when the fire occurred, yet recovery was denied. Nor was a landlord required to construct a building in such manner as to insure against the spread of fire, and the tenant, in the absence of some concealment of conditions, cannot recover on account of the condition of the building, so long as it remains in as safe condition as when he entered into his lease. Ordinarily, the rule of *caveat emptor* applies, and the tenant assumes the risks which are in plain view, and in no way concealed. While the common law duty of an innkeeper to warn his guest of fire is clear, (*Parker v. Kirkwood,* 134 Kans. 749, 8 Pac. (2d) 340; *Stewart v. Weiner,* 108 Neb. 49, 187 N. W. 121; *Friedman v. Shindler's Prairie House,* 224 App. Div. 232, 230 N. Y. S. 44) this rule has never been applied to one who rents apartments for more or less permanent occupancy, and the reason for the distinction is quite obvious. Owners of apartment buildings rarely maintain the staff which the innkeeper must have, and the rule contended for by the plaintiff

should apply only, if at all, to cases where the building is devoted exclusively to apartment rental purposes, and a staff maintained to care for the welfare of tenants in the manner the innkeeper is required to protect his guests. However, we are unwilling to approve an instruction which tells the jury that " * * * although they may believe from the evidence that said agents knew * * * that the building was on fire and failed to warn the plaintiff, that does not constitute negligence upon the part of the defendant and will not support a verdict in this case, and the jury should disregard such fact". Far and beyond any duty which the law may impose on a landlord, as such, is a duty resting on the solid basis of humanitarian conduct, and this instruction, in effect, told the jury that with knowledge of the fire, the agents, of the defendant could stand by at a time when due warning could have been given, and permit human beings to die in the flames, without legal liability. We do not think the evidence in this case discloses such a situation. The Carters were, apparently, doing all that could be expected under such circumstances, unless we accept as true the statement that at a time when the fire was raging, Mrs. Carter stated there was no fire; and the fact that the plaintiff was not warned of the fire in time to escape, by the ordinary exits does not, in this case, establish the liability of the defendant; but the instruction given on that point went too far. A case might arise where the wanton neglect or callous indifference of a landlord would warrant a recovery against him. If the instruction had been limited to the evidence of this case, we think it could be justified.

The instructions which told the jury that the defendant was under no duty to install and maintain equipment to extinguish or prevent the spread of fire are approved; and those which told the jury that even if such equipment was installed, the failure to maintain the same in a state of efficiency must be approved under circumstances and conditions under which this case was tried. However, we are not prepared to say that where a landlord volun-

tarily equips his building with what is commonly called "stand-by" fire equipment which is disclosed to the view of tenants, present and prospective, thus holding out to them assurances of protection and thereby presumably lessening the risks which under the doctrine of assumption of risk they are held to assume, he can then so neglect the maintenance of such equipment as to render such assurances illusory and of no practical value. But the responsibility of the landlord, if any, under these circumstances, is something entirely different from any duty set up in the declarations in this case. Here the duty is alleged to be to "equip and maintain". The maintenance is merely an adjunct to the duty to equip. Under the theory on which the declarations were prepared, the primary duty alleged was to install the equipment, but this we have held did not exist, and the duty of maintenance followed as secondary to the main duty. The duty to maintain such equipment is not required under common law or statute; but when voluntarily installed and held out to tenants as an element of safety, that duty rests upon an entirely different footing, and there is nothing in either the original or amended declaration on which a recovery can be based upon this theory. This is not a technical distinction. A defendant is entitled to know what he will be called upon to meet. In this case it was plainly advised that it would have to meet the charge that it had breached a common law duty in failing to equip and maintain certain fire equipment, and had the right, in defense against this allegation, to say that not being required as a matter of legal duty to equip, it could not be held to a duty to maintain that which it was not required to install in the first instance. If the plaintiff intended to rely upon the contention that the defendant, having voluntarily installed the equipment, was under a legal duty to maintain the same in a state of efficiency, and having breached that duty, became liable for the consequence of that breach, the declaration should have so alleged, and in failing to make

such allegation the plaintiff failed to lay the foundation upon which to build her case on such theory.

We conclude, therefore, that upon the record before us the trial court was warranted in setting aside the verdict of the jury, and its action in so doing is affirmed.

*Affirmed.*

HATCHER, JUDGE, dissenting:

Differing from the majority on what constitutes the common law duty of a landlord in cases such as this and considering the declaration broad enough to permit recovery on the failure of the landlord herein to maintain voluntary fire equipment, I respectfully dissent.