LESLIE H. COWAN

*v.*

ONE HOUR VALET, *Inc., a corp.*, PAUL SIGESMUND, *et al., etc.*

(No. 12626)

Submitted September 26, 1967. Decided November 28, 1967.

942

*Schmidt, Laas, Schrader & Miller, Thomas B. Miller,* for appellant.

*Bachmann, Hess, Bachmann & Garden, John B. Garden, Lester C. Hess, Jr.,* for appelles.

BERRY, JUDGE:

This action was instituted in the Circuit Court of Ohio County by the appellant, Leslie H. Cowan, as plaintiff below on May 29, 1964, against Paul Sigesmund and Anna Sigesmund and One Hour Valet, Inc., and later amended to include Marie Hirsch, doing business as One Hour Valet Cleaners, defendants below, for damages as a result of a personal injury suffered by the said Leslie H. Cowan when a floor in a building owned by the defendants Paul and Anna Sigesmund,

and leased by the defendant Marie Hirsch, doing business as the One Hour Valet Cleaners, collapsed. The jury returned a verdict July 14, 1965, in the amount of $35,000 against all of the defendants and judgment was entered thereon. The defendant, Marie Hirsch, did not make a motion for a new trial and the judgment is final as to her. A motion for a directed verdict and a motion for a new trial were timely perfected on behalf of the defendants Paul and Anna Sigesmund assigning errors on the question of liability of the defendants Paul and Anna Sigesmund, the lessors, and on the issue that the jury's verdict was excessive. The motion for a directed verdict was overruled but the motion for a new trial on the grounds of excessiveness of the verdict was sustained by order entered by the trial court on February 21, 1966, because the trial court was of the opinion that the evidence of plaintiff's disability was not sufficient to warrant the amount of the verdict, but the order specifically stated that the verdict was not the result of prejudice, partiality or corruption. On application to this Court by the plaintiff, Leslie H. Cowan, an appeal was granted November 14, 1966, after which the defendants cross assigned error on the part of the trial court in failing to grant their motion for a directed verdict, and in failing to grant a new trial on the grounds that the evidence failed to show any actionable negligence on their part to the plaintiff. The case was submitted for decision on arguments and briefs at the September Regular Term, 1967, of this Court.

The plaintiff was employed by the Wheeling Electric Company as an inspector and tester of electric equipment and meters, and he also carried an authorization from the Public Service Commission of West Virginia in connection with the testing of electric meters. On November 1, 1962 he entered the premises in question in connection with his duties. He went through the front room in which some of the cleaning was done and to which the public had access as customers of the

establishment and then proceeded to the back room where other cleaning processes were carried on and the larger equipment was housed, such as a boiler, where the public was not allowed. When he entered the back room he had to go to his right in order to reach the electrical distribution panel, or meter board, where the incoming wires, meters and switches for the various circuits were located on the south wall in the corner of the room. The plaintiff was charged with the duties of making periodic inspections such as checking voltages, seeing that the wiring was correct with no loose connections, that everything functioned properly and that the kilowatt hour meter was accurate. He also replaced the demand meter so that the removed one could be calibrated at the company workshop. He was authorized to test and inspect the electrical equipment and in connection with these duties he had inspected and checked the so-called hot wires with regard to grounding and such duties were performed in order to prevent the danger of burning of the building he inspected.

After the plaintiff first went in the back room to observe the type of electrical distribution panel he returned to his truck to obtain his tool kit. He said he did not notice anything unusual in connection with the floor on the first trip but that when he came back with his tool kit as soon as he entered the back room and turned to his right he fell through the floor with one foot or leg on each side of the joist landing on his spinal tailbone, known to doctors as the coccyx. His kit fell through the space beneath the floor. After extricating himself from the hole through which he fell he recovered his equipment by going to the basement and then returned to the office of his employer, the Wheeling Electric Company, where he reported the accident. Some employees of the Company later on the same day or the day after inspected the scene of the accident and took pictures of the hole in the floor. The testimony of these witnesses indicated that at the place the floor

fell it was observed that remnants of tile and floor boards appeared to be water soaked and rotten.

There is considerable conflict in the evidence on the part of Marie Hirsch and the plaintiff with regard to the condition of the floor at the time of the accident. Mrs. Hirsch was advised in October, 1962, by a boiler installer that she needed a new steam boiler and that the floor might have to be strengthened where it was to be placed. Witnesses for Mrs. Hirsch testified that just a few days before the accident they tore up the floor in the back room and started reenforcing it and replacing it with a new one in order to accomodate the new and heavier boiler which was necessary for the cleaning process and that when the plaintiff came to the building there was only a temporary floor in the center of the back room consisting of one of more boards across joists over which he would have to traverse to reach the area next to the electrical panel, although the area by the panel itself was still floored, and that he proceeded to go into the back room without properly identifying himself and over the objection of Mrs. Hirsch and her husband who informed him the floor was torn up. However, the plaintiff testified that he properly identified himself, entered the back room with the consent of the girl in the front room, and that when he entered the back room he observed no work whatsoever being done but that the floor looked dark; that when he fell through the floor the light was somewhat obscured, and although the floor looked dark, it appeared to be all right otherwise.

The plaintiff's testimony was substantiated by Howard Johnson, the man who installed the boiler and who testified that between the time he first visited the establishment to negotiate the sale of the boiler, which was about the middle of January, 1963, and the time it was installed at the end of the month someone had refloored the room. Also, the evidence of the employees of the Wheeling Electric Company when they examined

the premises after the accident was that there was no repairing of the floor being done.

After the accident the plaintiff returned to the office of his employer and was advised to go to the Ohio Valley General Hospital where x-rays were taken. He then went to the office of Dr. George R. Clarke, an orthopedic surgeon, where he was treated for his injury, but the pain continued to worsen and he went home and went to bed. He remained away from his work for a period of 25 days but after returning to work he continued to suffer considerable pain at the end of his spine and low back region with pain radiating down his leg. He returned for treatment from Dr. Clarke the latter part of 1962 and early part of 1963 after which time Dr. Clarke recommended the removal of his coccyx which was done in June, 1963, followed by a few days in a hospital. He remained off from work on this occasion from June 25, 1963 until about September 11, 1963. He continued to suffer pain at intervals which was attributable to lumbosacral joint injury and diagnosed as traumatic arthritis from damage to the disc space in the back. Dr. Clarke testified that he was of the opinion that plaintiff would continue to suffer pain the remainder of his life at intervals and that he would no doubt use a back brace at certain times. The doctor further testified that although his pain would not be constant that it would recur from time to time and he would have to take a considerable amount of aspirin.

The specific damages indicated by the evidence were loss of wages in the amount of $1935.36, medical and hospital expenses in the amount of $935.90, future medical expenses of about $75 per year and the cost of a brace at about $75, all of which would total approximately $3600.

We shall first take up the assignment of error upon which this appeal was granted relative to whether or not it was error for the trial court to set aside the verdict of the jury on the grounds that it was excessive.

The general rule in connection with this question is that a verdict of the jury for damages in personal injury cases will not be set aside by an appellate court as excessive unless its size indicates as a matter of law that there was passion, prejudice, partiality, mistake, or lack of due consideration. *Williams v. Penn Lines Service, Inc.*, 147 W.Va. 195, 126 S.E. 2d 384; *Sargent v. Malcomb*, 150 W. Va. 393, 146 S. E. 2d 561. In the *Williams* case this Court refused to set aside a verdict for $100,000 as being excessive which was awarded by a jury to a 49-year-old mother of two children, whose compensation amounted to about $90 per month received for various work she performed, and as a result of her injury she was forced to remain in the hospital for a period of about 52 days. The syllabus in that case clearly states the law in this State at this time with regard to this question. It reads as follows: "A jury is better able to judge of the circumstances of a case, the weight of the testimony, and the peculiar hardships and aggravations attendant upon an injury, and its verdict for damages for personal injury, which is not so excessive as to indicate, as a matter of law, passion, prejudice, partiality, mistake, or lack of due consideration, will not be set aside by this Court on that ground." The *Williams* case summarizes many earlier cases dealing with this question and brings the views up to date.

In the case of *Armstead v. Holbert, etc. and Conlon Baking Co.*, 146 W. Va. 582, 122 S. E. 2d 43, decided in 1961, in which the jury returned a verdict in the amount of $65,000 for a plaintiff, it was not necessary to decide whether or not the verdict was excessive in the disposition of the case because it was reversed on other grounds. However, it was the view of the majority of this Court in the *Armstead* case that the verdict was probably too large but "* * * it could not be said to be excessive as a matter of law and would not be set aside upon the grounds of excessiveness alone." In the *Malcomb* case it was stated that there was no exact

formula for placing a money value on pain, suffering and mental anguish resulting from personal injuries. In that case a verdict of $22,500 was returned in favor of the plaintiff, a 17 year old girl whose hospital and doctors' bills amounted to $935.61, as a result of her injuries suffered from burns. It was held in that case that a jury verdict will not be set aside as excessive unless it is not supported by the evidence or is so large as to indicate that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case, and that such rule is binding upon both the trial court and this Court and that the Supreme Court of Appeals in personal injury cases will reverse judgments of trial courts where the verdict is improperly set aside on the ground of excessiveness, will reinstate the verdict, and will enter judgment on the verdict if it appears that the action of the trial court was not justified. This Court held in the *Malcomb* case dealing with this question, that: "A well-settled legal principal, binding both on the trial court and this Court, is that in an action in which the compensation which the plaintiff is entitled to recover is indeterminate in character, the verdict of the jury may not be set aside as excessive unless it is not supported by the evidence or is so large that the amount thereof indicates that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case. Poe v. Pittman, W. Va. pt. 7 syl., 144 S. E. 2d 671. In such a case a mere difference of opinion between the court and the trial jury concerning the proper amount of recovery will not justify either the trial court or this Court in setting aside the verdict on the ground of inadequacy or excessiveness. Earl T. Browder v. County Court of Webster County, 145 W. Va. 696, pt. 5 syl., 116 S. E. 2d 867."

We are therefore of the opinion under the principle set out in the above cited authorities that the verdict of the jury in the case at bar in the amount of $35,000 should not have been set aside by the trial court.

The cross assignment of error made by the appellees in this Court after the appeal had been granted, and set out in the brief of the appellees in accordance with the Rules of this Court, presents a more difficult question.

The general rule is that a landlord or lessor is not liable for personal injury sustained on the leased premises, by reason of a defective condition thereof, by the tenant or those entering on the premises under the tenant's title. 52 C.J.S., Landlord and Tenant, §417; 32 Am. Jur., Landlord and Tenant, §665; *Oliver v. Cashin,* 192 Va. 540, 65 S. E. 2d 571. Ordinarily an invitee of a lessee or tenant stands in the same shoes as the tenant and the lessor is not liable for injuries suffered by an invitee of the tenant for defective condition of the premises. *Oliver v. Cashin, supra; Garland v. Stetson* (Mass.), 197 N.E. 678.

This Court has held that after the premises are leased to the lessee the landlord is not bound to keep the premises in repair and that a tenant assumes the risk relative to the condition of the premises arising after he takes possession thereof. *Gillespie v. Monarch Carbon Co.,* 98 W. Va. 485, 128 S. E. 318. See *Stewart v. Raleigh County Bank,* 121 W. Va. 181, 2 S. E. 2d 274, 122 A.L.R. 161. However, there are well-known exceptions to the general rule that a landlord or lessor is not liable to the lessee or his invitee for injuries received on leased premises. One of the most usual exceptions found in the law is the "common use" situation, that is, where tenants or invitees of tenants are injured on part of the premises which can be used in common by tenants or by the public, such as sidewalks, passageways, bathrooms, etc. This exception applies to all cases where the landlord retains control of certain places or things in connection with the leased premises. See *Marsh v. Riley,* 118 W. Va. 52, 188 S. E. 748; *Paternostro v. Bradley,* 262 S. W. 896; 52 C.J.S., Landlord and Tenant, Portions of Property under Landlord's Control,

§417 (b), page 24. The case of *Hill v. Norton,* 74 W. Va. 428, 82 S. E. 363, cited by the appellant to support his contention that the landlord is liable in the case at bar is one of the cases in this category. The plaintiff in the Hill case was a pedestrian lawfully using the sidewalk when injured by a defective coal hole cover. The lessor was charged with the responsibility of maintaining such coal hole in a reasonably safe condition where public may use the sidewalk where it was located. This exception is usually predicated on the injured person having the right to use such premises for the benefit of the lessor, or where such part of the equipment or thing is under the control of the lessor. See *R.K.O. Midwest Corporation v. Berling,* 51 Ohio App. 85, 199 N. E. 604; *Atlantic Rural Exposition, Inc. v. Fagan,* 195 Va. 13, 77 S. E. 2d 368, 373; Restatement of the Law, Second, Torts 2d, §361.

There are other well-known exceptions under which the landlord or lessor is held liable in such cases where the lessor has knowledge of a defective condition at the expiration of a lease and does not disclose or repair such condition before he renews the lease or relets the premises. 32 Am. Jur., Landlord and Tenant, §760. See *Hill v. Norton, supra.*

Regardless of the general rules there are cases where by the very nature of the equipment or thing the control really is in the lessor or landlord, although it may also serve the lessee or tenant, such as adjoining walls, plumbing, electrical equipment, even though it is physicially located in the part of the building leased to the lessee located in the demised part of the building. 32 Am. Jur., Landlord and Tenant, Sections 744, 745, 746, 747 and 748.

The status of the appellant was clearly that of an invitee. He was charged with the duties of inspecting the electrical equipment and checking the meters. In such cases it is held that such inspector or a person

with such duties has the status of an invitee because he was entering the premises in the performance of his duties. *Sheffield Co. v. Phillips,* 69 Ga. 41, 24 S. E. 2d 834; *Robey v. Keller,* 114 F. 2d 790; *Massey v. McGraw & Co.,* 233 F. 2d 905; *Howland v. Morris,* (Fla.) 196 So. 472. In the case of *Davis v. Fire Creek Fuel Company,* 144 W. Va. 537, 109 S. E. 2d 144, it was held that where a person has some business with the landowner there is an implied invitation to enter.

In the instant case the appellant was not only an invitee of the tenant but was an invitee of the landlord because it is clear from the evidence in this case that one of the reasons for his inspection and checking of the electrical meters located in the back room of the building owned by the appellees was to avoid and correct any situation that may have existed that would create a fire hazard to the building. It can thus be seen that he was not only an invitee of the appellees but was there on the premises for the benefit of the appellees or land owner. This case would perhaps come under the exception contained in Section 361 of the Restatement of the Law, Second, Torts 2d, as being part of the land retained in the lessor's control necessary for the safe use of the part leased as well as the other part of the building, because the inspection necessitated the checking of the wires passing through or located in the walls of the building owned by the appellees and would no doubt come under ''Comment (b)'' of Rule 361 of the Restatement of the Law, Second, Torts 2d, wherein it is stated: ''The rule stated in this Section applies to the maintenance of walls, roofs, and foundations of an apartment house or office building. It applies also to any other part of the land the careful maintenance of which is essential to the safe use of the rooms or offices or portion of land leased to the various lessees, such as the central heating, lighting, or water system.'' See *R.K.O. Midwest Corporation v. Berling, supra.*

The evidence in this case is undisputed that the appellees had been in the back room of the leased premises on various occasions while it was leased to the prior lessee, One Hour Valet, Inc., and also while it was in the possession of the present lessee; and appellees knew or should have known of the existence of the dangerous condition of the floor because they observed the equipment used in the cleaning establishment, the steam and the accumulation of water on the floor which caused the deterioration of the floor resulting in its collapse and injury to the appellant, and such condition was not disclosed to the appellant at any time or during his periodic inspections. See Section 358, Restatement of the Law, Second, Torts 2d, 243, and the Appendix Volume thereto at page 281.

The appellant was on the premises in question for a purpose common to both the lessee and the lessor because he not only checked the meters to ascertain the amount of electricity being used by the lessee, which was necessary to the lessee, but he was also on the premises for the benefit of the lessor in checking the wires and protecting the building from burning. Therefore, his presence on the premises at the time he was injured was a common purpose to both the lessee and the lessor, and in such case both would be liable if they knew or should have known of the dangerous condition and did not disclose it to the appellant. See syllabus point 2 of the case of *O'Dell v. McKenzie,* 150 W.Va. 346, 145 S. E. 2d 388.

Under the circumstances of the present case the appellant came on the leased premises as an invitee of the lessor and for his benefit to inspect electrical equipment, switches and meters of which under the circumstances of this case a measure of control was retained in the lessor, thus falling under an exception to the general rule that the landlord is not liable to third persons for injuries caused by dangerous conditions of

954

premises where such premises are leased and under the control of the tenant and the public is not allowed to use them. Consequently, the lessor would owe the appellant the duty of using reasonable care for his safety.

For the reasons stated herein, the judgment of the Circuit Court of Ohio County in setting aside the verdict of the jury and awarding the appellees a new trial is reversed, and the overruling of the motions for a directed verdict on the question of liability as to the appellees, considered in this Court under cross assignment of error, is affirmed; the verdict of the jury against the appellees is reinstated and the judgment entered thereon is reinstated by judgment entered in this Court. Code, 58-5-25.

*Reversed in part; affirmed in part; verdict and judgment reinstated.*