THE GEER COMPANY, A CORPORATION, APPELLANT, V. HALL COUNTY AIRPORT AUTHORITY, A CORPORATION, APPELLEE.

225 N. W. 2d 32

Filed January 16, 1975. No. 39553.

Luebs, Tracy, Dowding, Beltzer & Leininger, for appellant.

Cronin, Shamberg & Wolf, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and COLWELL, District Judge.

CLINTON, J.

The question in this case is the propriety of the action of the trial court in granting the defendant's motion for summary judgment. We affirm.

The defendant is an airport authority created in the year 1970 pursuant to the provisions of section 3-611, R. R. S. 1943, and it operates the Hall County airport under the terms of the pertinent statutes. The plaintiff is a mobile and modular home manufacturer which carries on its business in buildings located on the airport property and leased from the defendant. On August 26, 1971, a fire occurred in one of the leased buildings and personal property of the plaintiff stored therein was destroyed. The plaintiff seeks to recover the value of the destroyed property from the defendant upon various theories of negligence allegedly attributable to the defendant.

The plaintiff, in its petition, alleged the existence of the lease; that the defendant "openly and notoriously maintained certain fire fighting apparatus and equipment" on the airport, including a firetruck "which truck

appeared to be in good working order but which, in fact, was not"; and that at the time of the execution of the lease the plaintiff was aware of the availability of the firetruck, but was "unaware of its defective and inoperable condition."

Similar allegations were made with reference to a "dry sprinkler system" in the leased building and with reference to certain fire hydrants and water mains in the area near the building which burned. Plaintiff further alleged that the existence of the firefighting facilities in an apparently operable condition "warranted to the Plaintiff that fire protection was afforded"; and that the reliance of the plaintiff thereon created in the defendant the duty to properly maintain and keep in good working order the truck, hydrants, pipes, and automatic sprinkler system, and also to inspect said items and disclose any defects to the plaintiff. It alleged that these circumstances created a duty on the part of the defendant to immediately notify the plaintiff and firefighting agencies of any fires which might occur and of which the defendant became aware. The petition alleges that except for breach of the alleged duties the fire in question could have been extinguished. In a second cause of action the plaintiff claims that the existence of the foregoing defective equipment, especially the hydrants and mains, created a dangerous condition for which the defendant is liable.

Evidence in the form of depositions and affidavits presented at the hearing on the motion for summary judgment may be summarized as follows: The lease was entered into on August 1, 1971. It provided among other things: "Lessee rents said premises as they now exist." It contained no provision of any kind warranting the condition of the premises or providing that fire protection be furnished by the lessor. It imposed upon plaintiff the obligation for repairs and alterations and provided that alterations were to be permitted only after notice to the lessor. The lease covered the building only

and none of the surrounding property although access to the building necessarily was by way of roads which were under the control of the defendant. The evidence shows that at the time the lease was executed utility services to the building, including the water, electrical, and heating systems, were inoperable. The lessee was aware of this, had no need for utilities on the premises, and did not seek to have them connected and placed in an operable condition. There existed no agreement between the parties other than the written lease.

The defendant authority at the time of its creation had acquired possession of the airport premises, including the various buildings thereon, from its predecessor, the city of Grand Island. The city had at some undisclosed time in the past acquired the airport from the United States government. Part of the airport property consisted of the system of water mains and fire hydrants. In January of 1969 the United States Bureau of Reclamation was in possession of a portion of the airport premises which included the building later leased to the plaintiff by the defendant. At that time the Bureau of Reclamation caused the water and utilities to be turned off in the area occupied by it. This included certain of the water mains and fire hydrants in the area of the leased building. A portion of that building was equipped with a dry sprinkler system, but this system had become inoperable when the utilities were turned off during cold weather without draining the pipes. When the defendant took over the airport operation it did not attempt to restore utility service in the area nor to maintain it in any way. The portion of the hydrant system in the area formerly occupied by the bureau was inoperational only because a valve furnishing water to it was closed. However, defendant had made no attempt to keep that part of the system in repair. The authority did, however, continue to maintain and keep operational other parts of the water main and hydrants system. Part of that maintenance was a semiannual flushing

and checking of the fire hydrants in parts of the system other than that which had been closed down.

The plaintiff's manager testified that he did not know that the water had been turned off in the hydrants system adjacent to the leased building and that "we assumed that we had water with the fire hydrant outside of the building."

When the defendant took over the airport operation it received from its predecessor a 1954 Ward LaFrance 750-gallon pumper fire engine and appurtenant equipment. This truck was operated and maintained by the authority. Its system of batteries providing power for starting had on occasion functioned improperly.

Fire protection for the airport had originally been provided by the United States Air Force. When the Air Force left, it donated its equipment to the city of Grand Island which provided fire protection up until the time the authority was created in April 1970. At that time the airport authority contracted with a rural fire protection district for its services.

On the day the fire occurred the airport manager was notified of the fire at about 8:05 a.m., by a person who observed it. This communication came by telephone. The manager testified that he immediately called emergency telephone number 911 and asked that the rural fire district be notified. The 911 message center records indicate that a call notifying of the fire was received at 8:31. The airport manager also called the office of the plaintiff at the airport and notified its warehouse manager of the fire. Other airport employees attempted to start the firetruck and were unable to do so because of the defective batteries. The airport manager proceeded to the fire in another truck. The employees who had attempted to start the fire engine then removed hose from it and placed it in a pickup truck and drove to the fire. Before they could apply water, however, one of them had to make a return trip to procure a wrench with which to open a valve to admit water

into the part of the hydrant system which had not been kept operational.

The airport manager testified that he reached the fire between 8:25 and 8:30 a.m. The rural fire department truck arrived at about 8:42. Plaintiff's stock supervisor, who stated that he had been notified of the fire by the airport manager, arrived at the fire about 30 minutes before the rural fire department truck arrived. This would indicate that he received notice of the fire shortly after 8:05 a.m.

When the first rural firetruck arrived its crew attached firehose to an inoperable hydrant. When this was discovered the truck then had to be backed up about 300 feet and attached to another hydrant. One of the members of the crew stated that it took 6 to 8 minutes to get water on the fire after arrival.

The position of the plaintiff may be stated as follows: (1) A landlord may, by acts and conduct, assume a duty he does not have at common law and that, as applied to the evidence in this case, the defendant assumed a duty to provide fire protection to its tenant because it appeared to the plaintiff that the defendant was maintaining firefighting equipment and a fire hydrant system for airport use; that concomitant thereto was the duty to keep the equipment in operable order. Plaintiff cites and relies upon Stewart v. Raleigh County Bank, 121 W. Va. 181, 2 S. E. 2d 274, 122 A. L. R. 161. (2) The existence of apparent firefighting facilities which were in fact inoperable, namely, the fire hydrant and water supply, created a dangerous condition on land retained by the landlord. Plaintiff cites Restatement, Torts 2d, §§ 360, 361, pp. 250, 253. (3) The landlord, upon learning of the existence of the fire on the leased premises, owed a duty to the tenant to timely notify the lessee and fire protection agencies.

The statutes defining the powers and duties of an airport authority authorize it to provide space and facilities "for business and commercial purposes." § 3-613

(10), R. R. S. 1943. The authority may also construct and maintain the various utilities, including "water mains." § 3-613(13), R. R. S. 1943. It is clearly evident that the statutes empower the authority to lease out airport property where such utilization does not hamper the airport function. An examination of these statutes discloses no statutory duty to provide fire protection for premises which the authority might lease. As both parties assume, it is clear that whatever fire protection duties the defendant owed the plaintiff necessarily arose by reason of their relationship of landlord and tenant. As we have previously noted, the contract between the parties neither expressly nor impliedly placed any duty upon the landlord to provide fire protection services.

At common law a landlord has no duty to equip and maintain fire equipment apparatus for leased premises. Stewart v. Raleigh County Bank, *supra*. In the absence of some provision in the lease imposing such an obligation, the landlord has no obligation to provide such facilities for leased premises. Blotcky v. Gahm, 108 Neb. 275, 187 N. W. 640. In this latter case the landlord defendant leased to the plaintiff two floors of a six-story commercial building. All floors were equipped with an automatic sprinkler system which was connected to an automatic alarm in the office of the American District Telegraph Company. The sprinkler system and the alarm were leased from a company providing such services and the landlord paid it an annual rental for use and maintenance. For some reason the fire alarm system failed and there was a delay in discovering the fire. The lease between landlord and tenant in this case was an oral one. However, the tenant was aware of the existence of the system and of the contract of the landlord with the party providing the service. This court affirmed a holding of the District Court directing a verdict for the defendant landlord, holding that where a landlord leases a portion of a building and retains a portion, in the absence of a specific agreement therefor, or the

existence of fraud and deceit, the landlord is not bound to make repairs, employ a watchman, or maintain a fire alarm system. The court noted the duty of the landlord to use reasonable care to properly maintain portions of the premises used in common by the landlord and the tenants. It held that in the absence of some provision in the lease the landlord had no duty to maintain the sprinkler or fire alarm system, that no duty arose by implication, and that none arose by contracting with a third party to furnish and maintain such a system. We there said: "Negligence presupposes duty, and, if there is no duty, there can be no liability predicated upon a failure to do it."

The plaintiff's reliance upon Stewart v. Raleigh County Bank, *supra*, is misplaced. The general holding of the court in that case conforms to our own opinion in Blotcky v. Gahm, *supra*. The West Virginia court, however, went on in what appears to us to be dictum to say: "However, we are not prepared to say that where a landlord voluntarily equips his building with what is commonly called 'stand-by' fire equipment which is disclosed to the view of tenants, present and prospective, thus holding out to them assurances of protection and thereby presumably lessening the risks which under the doctrine of assumption of risk they are held to assume, he can then so neglect the maintenance of such equipment as to render such assurances illusory and of no practical value." That case involved a fire in an apartment house where the landlord furnished the common areas with fire extinguishers and firehose connected to the municipal system. A fire occurred and these appliances failed. The plaintiff tenant suffered personal injuries as a consequence. The action of the trial court in setting aside a jury verdict for the plaintiff lessee was affirmed because the theory on which the case might have been actionable was not pled.

Unlike the facts in Stewart v. Raleigh County Bank, *supra*, in the case at hand the property involved is a

warehouse accepted by the tenant in the condition in which it was at the time the lease was entered into. The existence of firefighting equipment on a portion of the airport in the exclusive control of the authority does not, without more, give rise to a duty on the part of the authority in its capacity of a landlord to furnish those facilities for the use of its tenants. As we see it, the situation is not different from that in which a landlord owns two adjacent warehouse properties, one he leases and one he uses for his own purposes. On the exterior portion of the latter he has a firehose and nozzle attached to a water system. His tenant on the adjacent property notes and observes this. He may even know that the landlord would be willing to let him use these facilities if necessary. The landlord fails to maintain the hose and lets it deteriorate. It bursts while it is being used to fight a fire on the leased premises. In this instance the landlord has breached no duty to the tenant because none existed in the first place.

Such conflicts in the evidence as exist are therefore immaterial for no inference may be drawn from them of a duty imposed by law or contract to furnish and maintain in good working order the fire protection equipment.

The principles set forth in Restatement, Torts 2d, §§ 360, 361, pp. 250, 253, do not support the plaintiff's second position for several reasons. Both sections pertain to a "dangerous condition" upon a portion of the leased premises of which the landlord maintains control but the use of which by the tenant is "appurtenant to the part leased" or "which is necessary to the safe use of the leased part." In the absence of some provision in the lease or of a statutory duty placed upon the authority, the use of the firefighting facilities was not "appurtenant" to the leased premises. The existence of the firefighting facilities was not necessary to the "use of the leased part" in any way. An examination of the illustrations in the Restatement text shows the inap-

plicability of the principles to the facts before us.

In support of its third position, to wit, that the defendant authority had a duty to promptly call firefighting agencies once its manager had become aware of the fire, plaintiff cites both Restatement, Torts 2d, § 358, p. 243, and Stewart v. Raleigh County Bank, *supra*. Neither authority supports the plaintiff's position. Section 358, Restatement, Torts 2d, p. 243, pertains to notifying a lessee of a dangerous condition which exists on the premises when the lease is entered into. The duty to warn referred to in Stewart v. Raleigh County Bank, *supra,* is an extension to the owner of an apartment house, in a case where he is present and has actual notice of the fire, of the common law duty of an innkeeper to notify his guests of a fire. Even if it were felt that the facts of this particular case imposed on the defendant a duty to warn in case of a fire on the leased premises, that duty was certainly fulfilled by the prompt notification given plaintiff by the defendant's manager.

A party is entitled to summary judgment if he can show (1) there is no genuine issue of material fact, and (2) where, under the facts, he is entitled to judgment as a matter of law. Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152. The trial court properly granted summary judgment in this case.

AFFIRMED.