Sheryn Kautz FIETZER and Oward
Kautz, Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant
and Third-Party-Plaintiff,

v.

MILWAUKEE MUTUAL INSURANCE
COMPANY and Douglas Hilker,
Third-Party-Defendants.

Civ. A. No. 72–C–582.

United States District Court,
E. D. Wisconsin.

Nov. 4, 1974.

Peter S. Nelson, Appleton, Wis., for plaintiffs.

Walter L. Merten, Milwaukee, Wis., for defendant and third-party plaintiff.

James P. O'Neill, Milwaukee, Wis., for third-party defendants.

REYNOLDS, Chief Judge.

This matter is before the court on the third-party defendants' motion for summary judgment which is granted.

Plaintiff Sheryn Kautz Fietzer sustained severe personal injuries in an automobile accident on October 4, 1969, in Waupaca County, Wisconsin. The accident involved two motor vehicles—one driven by the plaintiff Fietzer and another driven by Douglas Hilker and insured by Milwaukee Mutual Insurance Company (hereinafter "Milwaukee Mutual") . The Hilker vehicle struck the rear of the Fietzer vehicle, and as a result of the impact, the gasoline tank of the Fietzer vehicle, a 1964 Comet, ruptured. An ensuing fire severely burned the plaintiff Fietzer.

Prior to the commencement of any action, Hilker and Milwaukee Mutual secured a release from the plaintiffs in consideration of the sum of $11,052.26 releasing Hilker and Milwaukee Mutual from all claims or causes of action arising out of the accident. The release specifically reserved all claims that the plaintiffs may have against the Ford Motor Company (hereinafter "Ford"), the manufacturer of the 1964 Comet which plaintiff was driving at the time of the accident.

Subsequent to the release, plaintiffs commenced this suit in Waupaca County against the defendant Ford. The complaint, utilizing theories of negligence, strict liability, and warranty, alleged that the placement and construction of the gasoline tank constituted a design deficiency in the 1964 Comet automobile.

On October 19, 1972, the defendant Ford removed the action from state court, pursuant to 28 U.S.C. § 1441(a), to this court. The jurisdiction of this court is based on diversity of citizenship, 28 U.S.C. § 1332.

On December 27, 1972, Ford impleaded Hilker and Milwaukee Mutual alleging causal negligence on the part of Hilker and seeking contribution and/or indemnity for any amount that Ford is required to pay plaintiffs. On February 20, 1973, Hilker and Milwaukee Mutual answered the third-party complaint pleading the release as a defense and

moved for summary judgment pursuant to Rule 56(b), (c) of the Federal Rules of Civil Procedure.

The issue before this court is whether the third-party defendants are entitled to summary judgment as a matter of law by virtue of the release obtained from the plaintiffs.

The first question presented by the release under consideration is whether it is an effective bar to the nonsettling tort-feasor's right to contribution. Hilker and his insurer, in support of their motion for summary judgment, rely on Pierringer v. Hoger, 21 Wis.2d 182, 124 N.W.2d 106 (1963).

In *Pierringer*, the Wisconsin court set down the post Bielski v. Schulze procedure for drafting releases designed to bar the nonsettling tort-feasor's right to contribution from the settling tort-feasor. In order for a plaintiff to give a release and covenant which will protect the settling tort-feasor from a claim of contribution, the plaintiff must agree to satisfy such percentage of the judgment he ultimately recovers, as the settling tort-feasor's causal negligence is determined to be of all the causal negligence of all the tort-feasors. Pierringer v. Hoger, supra; Bielski v. Schulze, 16 Wis.2d 1, 114 N.W.2d 105 (1962). The plaintiff may reserve and maintain only that portion of his cause of action which might ultimately be held to be attributable to the nonsettling party. Such a release, satisfying a "to-be-determined" percentage of the plaintiffs' cause of action, is an effective bar to a nonsettling tort-feasor's claim for contribution.

The release given by plaintiff Fietzer to Hilker and his insurer is a Pierringer-type release. It specifically provides that "said claims and causes of action are credited and satisfied * * * to the extent of such percentage of the judgment they ultimately recover as the settling tortfeasor's causal negligence is determined to be of all the causal negligence of all the co-tortfeasors." The release specifically provides that the intent of the parties is that the release be construed in accordance with the doctrine of Pierringer v. Hoger. Therefore, under the doctrine of *Pierringer*, the release involved here is an effective bar to Ford's cross-claim against Hilker and Milwaukee Mutual for contribution.

The second question presented by the release is whether the settling parties, Hilker and Milwaukee Mutual, are protected against their retention or impleader as nominal parties in the continuing litigation between the plaintiff and Ford, the nonsettling tort-feasor. The Wisconsin court in *Pierringer*, supra, 21 Wis.2d at 191–192, 124 N.W.2d at 111–112, held that while *Bielski* requires an allocation of the causal negligence between joint tort-feasors in order to determine contribution:

"\* \* \* A release of one tort-feasor before trial and subsequent dismissal of the action and counter-claim against him does not complicate this problem. The instant releases contemplate such an issue of allocation as binding upon the plaintiff because he has satisfied that part of his cause of action for which liability is found to be attributable to the settling tort-feasors. The issue between the plaintiff and the nonsettling defendant \* \* \* is the percentage of causal nglicence, if any, of the nonsettling defendant, but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved. The determination of this issue between the plaintiff and the nonsettling defendant does not require the settling defendants to remain parties because the allocation, if any, of the causal negligence to the settling tort-feasors is merely a part of the mechanics by which the percentage of causal negligence of the nonsettling tort-feasor is determined.

It makes no practical difference to the settling tort-feasors what percentage of causal negligence is allocated to them because they have bought their peace in any event."

Thus, the Wisconsin court found no insuperable difficulties involved in dismissal of the settling tort-feasor from the continuing litigation.

Ford, in opposition to the motion for summary judgment, contends that the dismissal of the third-party defendants will unduly prejudice them in their defense of plaintiffs' suit. Ford attempts to distinguish *Pierringer,* claiming that the actions and cross-actions in that case had been commenced and were pending for some time prior to the settlements. The actions had been scheduled for trial and all pretrial discovery had been completed. Therefore, Ford contends that the dismissal of the settling parties had only a negligible effect upon the remaining parties in *Pierringer.*

In the instant case, Ford claims that the effect of the dismissal will, unlike *Pierringer,* substantially prejudice the remaining parties. If the third-party defendants remain as parties to the suit, they will be subject to the more liberal discovery proceedings of a party defendant, and, thus, if they are dismissed, Ford contends it will have lost such discovery advantages.

■ While Ford's claim of prejudice may have arguable substance, the fact remains that the third-party defendants "have bought their peace in any event." Part of what the settling tort-feasor purchased in obtaining a release was freedom from further involvement in future litigation. In Peiffer v. Allstate Insurance Co., 51 Wis.2d 329, 335, 187 N.W.2d 182, 185 (1970), the Wisconsin court, dealing with a Pierringer-type release, held that:

"* * * As such, it released the settling tort-feasor from *any* future liability, including contribution, * *. Additionally, it assured that the settling tort-feasor could *not* be made a party defendant in any action brought against nonsettling tort-feasors. * * *" (Emphasis added.)

Requiring a settling tort-feasor to remain in an action only to make him more available and accessible to discovery denies the settling tort-feasor of part of what he intended to purchase in the release.

The *Pierringer* procedure of releases was intended to encourage settlement of claims involving multiple joint tort-feasors in Wisconsin. Those defendants who wish to effect a settlement and pay for their release should be able to do so with the assurance that, if an adequate agreement is employed, they will be protected from both claims of contribution and future participation as parties in any continuing litigation. Requiring, under any circumstances, that the settling tort-feasor remain in the action would greatly reduce the value of the release and would have a chilling effect on the settlement of claims involving joint tort-feasors. The policy of encouraging settlement outweighs the prejudice, if any, which the dismissal of the settling tort-feasor may occasion to the remaining parties.

■ Alternatively, Ford contends that the *Pierringer* case relates only to the discharge of joint tort-feasors and that Ford and Hilker are not joint but successive tort-feasors. While I believe that Ford and Hilker are joint tort-feasors, if anything, in this case, assuming that they could be proved to be successive tort-feasors, the resolution of this motion would not be affected. Successive tort-feasors have no right to contribution. Fisher v. Milwaukee Electric Railway & Light Co., 173 Wis. 57, 180 N.W. 269 (1920). Ford in its third-party complaint demands judgment for contribution and/or indemnity. If the parties are not joint tort-feasors, Ford is not entitled to the relief demanded.

■ Ford contends, in its brief, that it is entitled to subrogation. This contention is not valid. The Wisconsin court in successive tort-feasor cases has consistently held that the original tort-

feasor is liable, in addition to the initial injuries, for any subsequent enhancement of those injuries caused by the negligence of the successive tort-feasor. Butzow v. Wausau Memorial Hospital, 51 Wis.2d 281, 187 N.W.2d 349 (1971). The successive tort-feasor is liable only for the subsequent injury he has caused. The rule is designed to shift from the injured party to the original tort-feasor the difficult burden of proving what part of the damages were caused by the original tort-feasor and what part is caused by the subsequent tort-feasor. Krenz v. Medical Protection Co., 57 Wis.2d 387, 394, 204 N.W.2d 663 (1972). Thus the court grants to the original tort-feasor the right of subrogation to recoup the damages attributable to the subsequent tort-feasor. It is by way of this subrogation right that the burden of proving a proper apportionment of damages is shifted to the original tort-feasor. Fisher v. Milwaukee Electric Railway & Light Co., supra. The subsequent tort-feasor has no similar right to subrogation because he is liable only for the enhancement of the original injury caused by his negligence. Thus, when a plaintiff releases the original tort-feasor and reserves his rights against the subsequent tort-feasor, the plaintiff has extinguished his claim for the original injury and can only recover the damages caused by the subsequent tort-feasor's negligence. The effect of the release given to the original tort-feasor is to shift back to the plaintiff the burden of proving what portion of the damages were caused by the subsequent tort-feasor's negligence. The subsequent tort-feasor has no reason to complain nor any theory upon which to implead the original tort-feasor into the plaintiff's suit against him.

 Thus, even assuming that Ford and Hilker were successive rather than joint tort-feasors, the release given to the third-party defendants bars their inclusion in any continuing litigation.

It is therefore ordered that third-party defendants' motion for summary judgment be and it hereby is granted.