**David A. REESE, a minor, by and through Marvin Reese, his father and next friend, Plaintiff,**

**v.**

**AMF–WHITELY, a corporation, Defendant and Third-Party Plaintiff,**

**v.**

**Keith BLACKLEDGE et al., Third-Party Defendants.**

**Civ. No. 75–0–6.**

United States District Court, D. Nebraska.

Oct. 20, 1976.

John T. Carpenter, Omaha, Neb., for plaintiff.

Keith Howard, Omaha, Neb., for defendant.

David A. Johnson, J. Thomas Rowen, Omaha, Neb., for third-party defendants.

## MEMORANDUM AND ORDER

DENNEY, District Judge.

This matter comes before the Court upon the motion of the third-party defendants, Keith Blackledge and Bruce Claussen, to dismiss the third-party complaint for failure to state a claim upon which relief may be granted [Filing # 81].

This action was brought on January 9, 1975 by Marvin Reese on behalf of his son, David A. Reese, who suffered severe injuries and paraplegia when a gym bar manufactured by the defendant, AMF–Whitely, collapsed as David was using it. David's injuries are alleged to be the proximate result of AMF–Whitely's negligence in the design and manufacture of the gym bar.

AMF–Whitely filed a third-party complaint [Filing # 24] against Keith Blackledge, charging that his negligent installation of the gym bar and failure to warn of the dangers associated with its use contributed to the plaintiff's injuries. The third-party complaint also names Bruce Claussen, M.D., alleged to have caused or aggravated

the plaintiff's condition by negligent medical care. The third-party complaint seeks contribution or indemnity from the third-party defendants.

### Keith Blackledge

As this is a diversity case, the Court will apply the substantive law of Nebraska as required by *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See *Petznick v. Clark Equipment Co.*, 333 F.Supp. 913 (D.Neb.1971).

In *Royal Indem. Co. v. Aetna Cas. & Sur. Co.*, 193 Neb. 752, 229 N.W.2d 183 (1975) [hereinafter *Royal Indemnity*], the Nebraska Supreme Court clarified the law of contribution among negligent joint tortfeasors in Nebraska.

> We, therefore, hold that in this jurisdiction there is no absolute bar to contribution among negligent joint tort-feasors; and also, as in this case, that a right to equitable contribution exists among judgment debtors jointly liable in tort for damages negligently caused, which right becomes enforceable on behalf of any party when he discharges more than his proportionate share of the judgment. To the extent that *Tober v. Hampton, supra* [178 Neb. 858, 136 N.W.2d 194], and *Farmer's Elevator Mut. Ins. Co. v. American Mut. Liability Ins. Co., supra*, [185 Neb. 4, 173 N.W.2d 378], contain language inconsistent with the rule announced herein, they are overruled. In all other particulars, those cases are hereby expressly reaffirmed.

*Royal Indemnity* at 764, 229 N.W.2d at 190.

 Thus it is now clear that as between defendants against whom a joint judgment in tort has been rendered, contribution is allowed. The court did not directly rule as to contribution between negligent joint tortfeasors against whom judgments have not yet been rendered. It is therefore incumbent upon this Court to apply the principle that it believes the Nebraska court is likely in the future to adopt. See C. Wright, *Law of Federal Courts* § 58 (2nd ed. 1970).

It could be argued because of language in *Royal Indemnity* that contribution would be barred in Nebraska except as to tortfeasors jointly liable as a result of judgments previously rendered against both in favor of the plaintiff. As this Court interprets *Royal Indemnity*, however, the Nebraska Supreme Court did not intend to place such narrow limitations on the availability of contribution. The statement that "there is no absolute bar to contribution among negligent joint tort-feasors" would seem to encompass both those against whom a plaintiff has successfully obtained a judgment and those whose liability remains to be fixed either in a cross claim or third-party claim in the original plaintiff's suit or in an independent action for contribution by the original defendant.

No policy appears to be served by limiting contribution to those cases in which the injured party chooses to sue both tortfeasors. Moreover, the policy expressed in the following language by the Nebraska court would be impeded by such restrictions.

> We are thus left only with the consideration that " * * * general principles of justice require that in the case of a common obligation, the discharge of it by one of the obligors without proportionate payment from the other, gives the latter an advantage to which he is not equitably entitled." *George's Radio, Inc. v. Capital Transit Co.*, 75 U.S.App.D.C. [187] at 189, 126 F.2d [219] at 221. Thus, an eminent authority has pointed out the " * * * obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered by one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free." Prosser, *Law of Torts* (4th Ed.), § 50, p. 307.

*Royal Indemnity* at 763–64, 229 N.W.2d at 189.

It has been suggested that the reason for limiting contribution among cowrongdoers to those against whom judgments have been rendered is to protect a defendant from liability to a codefendant when, over the opposition of the former, the latter settles with the plaintiff.[1] The third-party defendants do not assert that they resist contribution because AMF–Whitely intends to settle without judgment with the plaintiff.[2] Moreover, Mr. Blackledge will not be required to contribute a proportion of the damages to the defendant until his own liability has been ascertained as a result of judgment in the third-party action.

■ The third-party complaint alleges a factual basis for contribution from Keith Blackledge should AMF–Whitely be found liable to the plaintiff. If the defendant's allegations are true, Mr. Blackledge's negligence was a concurrent cause of the damage which is the subject of the plaintiff's claim against the defendant. *See generally Ford Motor Co. v. Russell & Smith Ford Co.*, 474 S.W.2d 549, 561 (Tex.Civ.App.1971); *Annot.*, 97 A.L.R.2d 811 (1964). Fed.R. Civ.P. 14 permits the joinder of a party who "is or may be liable" to the defending party for all or part of the plaintiff's claim. As Mr. Blackledge "may be liable" for contribution, he may be joined as third-party defendant in this action in order to determine his accountability. As AMF–Whitely has stated a claim for contribution against Keith Blackledge, the court does not decide whether indemnity might be available in the alternative.

*Bruce Claussen, M.D.*

■ If the allegations of the third-party complaint are true, AMF–Whitely and Dr. Claussen were not joint tortfeasors because, acting independently and at different times, they successively injured the plaintiff. There appears to be a widely accepted distinction between joint tortfeasors, who act in concert or whose negligent acts combine as the concurrent producing causes of the same injury, and successive tortfeasors, whose acts are consecutive or successive, the later wrongdoer enhancing injuries inflicted by the original wrongdoer or contributing to the overall damage. A party who negligently causes an injury so that the victim seeks medical care, and a physician who aggravates the damage by negligent treatment are not joint tortfeasors and are not subject to contribution from each other. *See, e. g., United States Lines, Inc., v. United States*, 470 F.2d 487, 491 (5th Cir. 1972); *Fietzer v. Ford Motor Co.* 383 F.Supp. 33, 36 (E.D.Wis.1974); *Annot.*, 8 A.L.R.3d 639 (1966) and cases cited therein.

■ The original negligence of AMF–Whitely may be regarded in law as a proximate cause of the damages flowing from Dr. Claussen's subsequent malpractice. The general rule is that "[a] tortfeasor is answerable for all consequences that, in the natural course of events, flow from his unlawful or negligent acts, although those results are brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrongdoer, or were the natural consequences of his original wrongful act." *Jarosh v. Van Meter*, 171 Neb. 61, 105 N.W.2d 531, 536 (1960); *Beranek v. Petracek*, 184 Neb. 516, 169 N.W.2d 275, 279 (1969). Negligent medical treatment is regarded in certain circumstances as a foreseeable risk proximately occasioned by the original tortfeasor's wrongful acts. *See Restatement of Torts 2d* § 457, comment a, at 496–99 (1965). Of course, the negligent physician, if found

---

1. "The argument against it is that the other defendant may take no part in the settlement, violently oppose it, and regard it as outrageous, and still be held liable for his share. It is for this reason that the statutes of several jurisdictions limit contribution to those against whom judgments have been rendered, which fix both liability and amount." W. Prosser, *Law of Torts* § 50 at 308 (4th ed. 1971).

2. The Court does not reach the question of Mr. Blackledge's liability should AMF–Whitely settle with the plaintiff and still seek contribution, except to note that Mr. Blackledge would not be entirely unprotected in that event. He could contest the amount of damages paid to the plaintiff and the reasonableness of the settlement, as well as his own liability. W. Prosser, *supra*, § 50 at 309.

guilty of malpractice, is separately liable to the plaintiff for his own wrongful acts. *See* W. Prosser, *supra*, § 52 at 320–21.

Thus Dr. Claussen's alleged conduct, if true, will subject him to liability to the plaintiff for medical malpractice. If the risk of such improper medical care is held at trial to have been a reasonably foreseeable consequence of AMF–Whitely's wrongdoing, the plaintiff may recover from the defendant damages covering the additional harm inflicted by Dr. Claussen. The question is whether the defendant may then shift the burden of any of these damages to the negligent physician.

The courts of a number of jurisdictions have allowed a tortfeasor who initially injured a plaintiff to recover reimbursement from a physician who caused new or aggravated injury. In *Herrero v. Atkinson*, 227 Cal.App.2d 69, 38 Cal.Rptr. 490, 8 A.L.R.3d 629 (1964), the California court stated,

> Although the original negligence of Herrero may be regarded in law as a proximate cause of the damages flowing from the subsequent malpractice of the cross-defendants, and the plaintiff may recover a joint and several judgment against all who are found liable, there is no reason why the ultimate burden of damages should not be distributed among the various defendants, and each be made to bear that portion of the judgment which in equity and good conscience should be borne by him. Here, Herrero has had no part in the selection of any of the cross-defendant doctors or hospital. Nothing appears to indicate that he was even aware of the decedent's decision to submit to surgery. He has had no control

or direction over the conduct of the cross-defendants and not the slightest opportunity to protect himself against their negligence, yet he is made liable in law for any damages caused by them. *Under such circumstances it is equitable and just that indemnity be allowed Herrero, and that the cross-defendant doctors and hospital bear that portion of the damages caused by their own negligent conduct.* [Emphasis added].

*Id.*, 38 Cal.Rptr. at 493, 8 A.L.R.3d at 635. Other jurisdictions faced with comparable facts have awarded indemnity. *See, e. g., Penn Tanker Co. v. United States*, 409 F.2d 514, 520 (5th Cir. 1969).[3] *Cf. Restatement of Restitution* § 97 at 421 (1937).

■ While there may be little difference in practical effect between the doctrines of noncontractual indemnity and subrogation,[4] the Court finds that the better theory and the one more likely to be adopted in Nebraska in such circumstances is subrogation. Subrogation is an equitable doctrine applied in order to avoid unjust enrichment when one party has discharged an obligation which should have been satisfied in whole or in part by another. *See Interstate Fire and Cas. Co. v. City of Milwaukee*, 45 Wis.2d 331, 173 N.W.2d 187, 189 (1970); *Restatement of Restitution* § 162 at 653 (1937).

■ The doctrine of subrogation has been applied in successive tortfeasor cases when the original wrongdoer has paid damages attributable not only to his own wrong but to the subsequent aggravation of injuries by the successive tortfeasor. *See, e. g., Fietzer v. Ford Motor Co.*, 383 F.Supp. 33,

---

**3.** The Penn Tanker court stated, "Although the original negligence of Penn Tanker may be in the law a proximate cause of the damages flowing from the subsequent maltreatment by [the Government physician], there is no reason why the ultimate burden of damages should not be distributed between Penn Tanker and the Government, with each made to bear that portion caused by its own negligent conduct." [Citations omitted.] *See also Annot:*, 8 A.L.R.3d 639 (1966) and cases cited therein. *But see Transcon Lines v. Barnes*, 17 Ariz.App. 428, 498 P.2d 502 (1972).

**4.** One court has stated, "It is extremely difficult to tell legal subrogation and implied indemnity apart. They are closely related and 'oftentimes the possessor of one right is also the possessor of the other.' . . . In their outer bounds the difference between them is about that between cherubim and seraphim in the angelic orders." *United States Lines, Inc. v. United States*, 470 F.2d 487, 494 (5th Cir. 1972).

**990**

36–37 (E.D.Wis.1974), in which the Court explained that

> [t]he Wisconsin court in successive tort-feasor cases has consistently held that the original tort-feasor is liable, in addition to the initial injuries, for any subsequent enhancement of those injuries caused by the negligence of the successive tort-feasor. . . . The successive tort-feasor is liable only for the subsequent injury he has caused. The rule is designed to shift from the injured party to the original tort-feasor the difficult burden of proving what part of the damages were caused by the original tort-feasor and what part is caused by the subsequent tort-feasor. . . . *Thus the court grants to the original tort-feasor the right of subrogation to recoup the damages attributable to the subsequent tort-feasor. It is by way of this subrogation right that the burden of proving a proper apportionment of damages is shifted to the original tort-feasor.* . . . The subsequent tort-feasor has no similar right to subrogation because he is liable only for the enhancement of the original injury caused by his negligence. [Emphasis added].

*Id.* [Citations omitted.]

*See also Greene v. Waters,* 260 Wis. 40, 49 N.W.2d 919, 921 (1951), in which the Wisconsin court stated that upon payment of the entire claim, the original tortfeasor would be subrogated to the plaintiff's rights against the subsequently negligent physician for that part of the damages primarily due to the physician's tortious conduct.

On the pleadings alone, the Court cannot determine whether Dr. Claussen will be liable to anyone. However, the defendant, AMF–Whitely, has sufficiently stated a claim for potential subrogation to the plaintiff's rights against Dr. Claussen to resist the motion to dismiss.

IT IS THEREFORE ORDERED that the motion of the third-party defendants to dismiss the third-party complaint is denied.

IT IS FURTHER ORDERED that the defendant is granted leave to amend the third-party complaint within five (5) days of the date hereof to include a claim for subrogation and restitution against Bruce Claussen, M.D.