Ruth Ann LIPARI, and the Bank of Elkhorn, Special Co-Administrators of the Estate of Dennis F. Lipari, Deceased, and Ruth Ann Lipari, Individually, Plaintiffs,

v.

SEARS, ROEBUCK & CO., a New York Corporation, and United States of America, Defendants.

SEARS, ROEBUCK & CO., a New York Corporation, Defendant and Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

Civ. No. 77-0-458.

United States District Court, D. Nebraska.

July 17, 1980.

186

William T. Ginsburg, Omaha, Neb., for plaintiff.

Frank H. Kulig, Omaha, Neb., for defendant and third-party plaintiff, Sears, Roebuck & Co.

Robert F. Kokrda, Asst. U. S. Atty., D. Neb., Omaha, Neb., for defendant and third-party defendant, U. S.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the motion of the United States to dismiss or for summary judgment [Filing # 102].

In September of 1977, Ulysses L. Cribbs, Jr., purchased a shotgun from a Sears store located in Bellevue, Nebraska. Prior to purchasing this gun, Mr. Cribbs had been committed to a mental institution, and had been receiving psychiatric care from the Veterans Administration [V.A.]. Shortly after purchasing the gun, Mr. Cribbs resumed participation in psychiatric day care treatment at the V.A. This treatment lasted from September 23, 1977, until October 17, 1977, when Mr. Cribbs removed himself from this treatment, against the advice of his doctors. On November 26, 1977, Mr. Cribbs entered an Omaha night club and fired a shotgun into a crowded dining room, killing Dennis F. Lipari and seriously wounding his wife, Ruth Ann Lipari.

The instant case is a part of the litigation arising out of this shooting incident. This action was originally brought against Sears, Roebuck & Company by Ruth Ann Lipari and the Bank of Elkhorn, co-administrators of Dennis F. Lipari's estate, to recover damages for the wrongful death of Lipari. Ruth Ann Lipari also seeks to recover damages for her own personal injuries. The plaintiffs allege that Lipari's death and Mrs. Lipari's personal injuries were caused by the negligence of Sears in selling a gun to one whom Sears knew or should have known had been adjudged mentally defective or had been committed to a mental institution.

Sears has filed a third-party complaint against the United States. This third-party complaint is brought under the Federal Tort Claims Act. It alleges that the United States may be liable to Sears under the doctrines of contribution and indemnity for any damages which Sears may be required to pay the plaintiffs. Specifically, Sears alleges that the V.A.'s treatment of Mr. Cribbs was negligent because the V.A. knew or should have known that Mr. Cribbs was dangerous to himself and others, and because the V.A., despite this knowledge, failed "to take those steps, and to initiate those measures and procedures customarily taken or initiated for the care and treatment of mentally ill and dangerous persons by mental health professionals practicing in the community." This negligence on the part of the V.A. is alleged to be the proximate cause of Dennis Lipari's death and of Ruth Lipari's injuries.

Subsequent to the filing of Sears' third-party complaint, the plaintiffs filed a second complaint herein naming the United States as a defendant. This complaint is brought under the Federal Tort Claims Act and contains essentially the same allegations as the third-party complaint. The plaintiffs, however, allege that the V.A. was negligent in failing to detain Mr. Cribbs or in failing to initiate civil commitment proceedings against him.

In response to these complaints, the United States has filed a motion to dismiss or, in the alternative, for summary judgment. Since this motion involves primarily legal questions addressed to the sufficiency of the complaints' allegations, the Court will treat the motion of the United States as strictly a motion to dismiss.[1] To the extent

---

1. The standard for reviewing the sufficiency of a complaint's allegation is a strict one. As this Court recently stated in *McAndrews v. Goody Co.*, 460 F.Supp. 104, 107 (D.Neb.1978):

that the United States seeks a summary judgment based on documents other than the pleadings, the Court is of the opinion that such matters should be resolved only after the factual record is fully developed at trial. *See McLain v. Meier*, 612 F.2d 349, 356 (8th Cir. 1979).

Essentially, the motion of the United States raises three issues: (1) whether the complaints state a cause of action against the United States for the V.A.'s negligent treatment of Mr. Cribbs; (2) whether the parties' claims against the United States are barred by the discretionary function exception to the Federal Tort Claims Act; and (3) whether the third-party complaint properly alleges a claim for indemnity or contribution under Nebraska law. Each party has submitted extensive written argument addressing these issues. After careful consideration of these arguments, the Court is of the opinion that the United States' motion to dismiss must be denied.

*Failure to State Cause of Action*

Under the Federal Tort Claims Act, the United States is liable for the torts of its employees only to the extent that a private person would be liable to the claimant under the law of the place where the tortious acts or omissions occurred. *See* 28 U.S.C. §§ 1346(b), 2674. The incidents involved in the instant action all occurred in Nebraska. This Court must therefore determine whether Nebraska law would impose a duty on a psychotherapist to take reasonable precautions to protect potential victims of his patient, when the psychotherapist knows or should know that his patient presents a danger to others.

Unfortunately, the Nebraska Supreme Court has never addressed the issue of a therapist's duty to third persons. It therefore becomes the duty of this Court to ascertain what rule of law the Nebraska Supreme Court would adopt in this situation. In making this determination, the Court will consider any Nebraska authority dealing with issues analogous to those raised in this case. The Court will also consider the case law of other jurisdictions, to the extent that it suggests the rule of law which the Nebraska Supreme Court would be likely to adopt. *See Hoesing v. Sears, Roebuck & Co.*, 484 F.Supp. 478, 478–79 (D.Neb.1980).

An essential element in any negligence action is the existence of a legal duty which the defendant owes to the plaintiff. *Daniels v. Andersen*, 195 Neb. 95, 98, 237 N.W.2d 397, 400 (1975). Under the common law, a person had no duty to prevent a third party from causing physical injury to another. A number of courts, however, have recognized an exception to this general rule. Under this exception, a person has a duty to control the conduct of a third person and thereby to prevent physical harm to another if

> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts § 315 (1965). *See, e. g., Seibel v. City & County of Honolulu*, Haw., 602 P.2d 532, 536 (1979). Since there is clearly no relationship between the V.A. and the persons injured by Mr. Cribbs, the Court will limit its analysis to a discussion of the relationship between Mr. Cribbs and his doctors at the V.A.

Under the Restatement approach, the psychotherapist-patient relationship has been found to be a sufficient basis for im-

---

A count contained within a complaint should not be dismissed for insufficiency "unless it appears to a certainty that [the claimant] is entitled to no relief under any state of facts which could be proved in support of the claim." *Morton Bldgs. of Neb., Inc. v. Morton Bldgs., Inc.*, 333 F.Supp. 187, 191 (D.Neb. 1971). The standard is a rigorous one. . . As a practical matter, a dismissal for failure to state a claim upon which relief can be granted is likely to be ordered "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974). *Accord, Jackson Sawmill Co. v. United States*, 580 F.2d 302 (8th Cir. 1978).

posing an affirmative duty on the therapist for the benefit of third persons. *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976); *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500 (1979). Although the cases recognizing this duty are from jurisdictions other than Nebraska, this Court may be guided by these decisions since they provide a "just and reasoned" analysis of the issues raised in the instant case. *See Seedkem v. Safranek*, 466 F.Supp. 340, 343 (D.Neb.1979). The Court will therefore discuss these decisions in some detail.

In *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976), the plaintiffs' complaint alleged that the defendant therapists had a duty to warn their daughter of the danger posed to her by one of the therapist's patients.[2] The California Supreme Court's analysis of whether the complaint stated a cause of action began with recognition of the general rule that one person owes no duty to control the acts of another. However, the court then adopted the Restatement's special relationship exception to this rule. Applying this exception to the facts before it, the court held that the relationship between the patient and her therapist was sufficient to support the imposition of an affirmative duty on the defendant for the benefit of third persons. *Id.* at 435, 551 P.2d at 343, 131 Cal.Rptr. at 23. This duty existed even though the defendant therapists did not stand in a special relationship to both the injured party and the person whose conduct created the risk. *Id.* at 436, 551 P.2d at 344, 131 Cal.Rptr. at 24.

In support of recognition of this duty, the court noted that in other settings, courts had found doctors and hospitals responsible for the behavior of their patients. Among the cases cited by the *Tarasoff* court were decisions in which the courts had recognized that a mental hospital may be liable for the negligent release of dangerous patients. *Id.* at 436 n.7, 551 P.2d at 343 n.7, 344, 131 Cal.Rptr. at 23 n.7, and in which the courts had held that a doctor was liable for his negligence to those contracting a contagious disease from his patient. Id. at 436, 551 P.2d at 344, 131 Cal.Rptr. at 24.

In *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500 (1979), the New Jersey Superior Court was faced with the issue of whether a psychiatrist had a duty to warn a potential victim of one of his patients of the danger posed by that patient.[3] The *McIntosh* court adopted the Restatement rule that a defendant has no duty to control the actions of another unless a special relationship had existed between the defendant and either the potential victim or the person whose conduct had created the risk. *Id.* at 483, 403 A.2d at 508–09. In analyzing the issue of whether the psychiatrist-patient relationship would support the creation of such a duty, the court noted that there were other factual settings in which the physician-patient relationship gave rise to an affirmative duty on the medical professions.

---

2. The *Tarasoff* plaintiffs were the parents of Tatiana Tarasoff. Tatiana was killed by Prosenjit Poddar, a psychiatric patient of the defendant therapists. The plaintiffs alleged that two months prior to their daughter's death, Poddar informed his therapist that he intended to kill a young woman fitting Tatiana's description. Although Poddar did not specifically name Tatiana as his intended victim, the complaints alleged that the defendant therapists could have readily identified the endangered person as Tatiana. *Id.* at 430-33, 551 P.2d at 339-41, 131 Cal.Rptr. at 19, 21.

In addition to the therapists, the plaintiffs' complaints name several other persons as defendants. The complaints also allege other theories of recovery in addition to negligent failure to warn. These additional defendants and theories of recovery are not relevant to the issues under consideration in the instant case.

3. The *McIntosh* plaintiff's daughter was killed by a patient of the defendant, a psychiatrist. The events leading up to the daughter's death were slightly different from the facts in *Tarasoff*. In *McIntosh*, the patient never directly threatened to physically harm the plaintiff's daughter or any person readily identifiable as her daughter. Rather, the plaintiff contended that the defendant, based on the information at his disposal, should have known that his patient posed a threat to the plaintiff's daughter and should have warned the daughter or the authorities of this danger. *Id.* at 473–481, 403 A.2d at 503-06.

[T]he concept of legal duties for the medical profession is not new. A doctor-patient relationship in some circumstances admittedly places a duty to warn others of contagious diseases. New Jersey recognizes the general rule that a person who negligently exposes another to a contagious disease, which the other contracts, is liable in damages. . . . Specifically, a physician has the duty to warn third persons against possible exposure to contagious diseases, e. g., tuberculosis, venereal diseases, and so forth. . . That duty extends to instances where the physician should have known of the infectious disease.

Physicians also must report tuberculosis, venereal disease and various other contagious diseases, *see e. g.*, N.J.S.A. 26:4–15, as well as certain other conditions.

*Id.* at 484, 403 A.2d at 509.

Based on these previously recognized duties,[4] the *McIntosh* court concluded that the psychiatrist had an affirmative duty to take reasonable precautions to protect potential victims of his patients. In the *McIntosh* court's opinion, "the relationship giving rise to this duty [could] be found either in that existing between the therapist and the patient, as was alluded to in *Tarasoff* II, or in the more broadly based obligation a practitioner may have to protect the welfare of the community, which is analogous to the obligation a physician has to warn third persons of infectious or contagious disease." *Id.* at 490, 403 A.2d at 512.

The *Tarasoff* and *McIntosh* decisions provide a well-reasoned framework for analyzing the issue of whether a psychotherapist owes an affirmative duty to persons other than his patient. This Court, however, must determine whether the Nebraska Supreme Court would adopt the *Tarasoff-McIntosh* analysis.

The basis for the *Tarasoff-McIntosh* rule imposing an affirmative duty on psychotherapists was the courts' adoption of the special relationship analysis of the Restatement (Second) of Torts § 315. This Court is not aware of any Nebraska case expressly adopting the rule found in the Restatement § 315. However, there are two Nebraska cases which implicitly recognize the special relationship analysis. *See Daniels v. Andersen, supra*, 195 Neb. at 98, 237 N.W.2d at 400, *Rose v. Gisi*, 139 Neb. 593, 597–598, 298 N.W. 333, 336 (1941).[5] In these cases, the Nebraska Supreme Court found a duty arising out of the defendant's relationship with the plaintiff, *Daniels v. Andersen, supra*, 195 Neb. at 98, 237 N.W.2d at 400, or with the person creating the risk, *Rose v. Gisi, supra*, 139 Neb. 597–99, 298 N.W. at 336–37. The duty required that the defendant exer-

**4.** The *McIntosh* court explained its holding as follows:

> To an admittedly uncertain but nevertheless sufficient extent, "dangerousness" must be considered identifiable (despite the contrary claims presented by defendant in this matter), and although not a "disease" as that term is commonly used, may affect third persons in much the same sense as a disease may be communicable. The obligation imposed by this court, therefore, is similar to that already borne by the medical profession in another context.
>
> *Id.* at 490, 403 A.2d at 512.

**5.** The Restatement (Second) of Torts § 315 sets out the general principle that an individual has no duty to control the conduct of a third person unless a special relationship exists either between the individual and the third person or between the individual and the person threatened by that conduct. The Restatement sections following § 315 present specific examples of special relationships giving rise to an affirmative duty. *See* Restatement (Second) of Torts §§ 316–320. *See also* Restatement (Second) of Torts § 315, Comment b.

In *Daniels v. Andersen*, the Nebraska Supreme Court relied on Restatement § 320 in finding that a jailer had a duty to protect his prisoners from the violent acts of others. *Daniels v. Andersen*, 195 Neb. at 98, 237 N.W.2d at 400. Although the *Daniels* decision did not refer to the general principle found in § 315, the court's adoption of § 320, a specific application of the general principle, suggests that the Nebraska court would follow the general principle on which § 320 is based. Similarly, in *Rose v. Gisi*, the court cited with approval the rule found in Restatement (First) of Torts § 318. *Rose v. Gisi*, 139 Neb. at 597–98, 298 N.W. at 336. Since the Restatement (First) of Torts § 318 and the Restatement (Second) of Torts § 318 are apparently the same, it would also appear that the *Rose* case implicitly applied the special relationship rule by its adoption of a specific application of the rule.

cise reasonable care in controlling the action of a third person. In light of these Nebraska decisions recognizing an affirmative duty based on a special relationship, this Court is of the opinion that the Nebraska Supreme Court would adopt the special relationship analysis found in Restatement § 315.

Having determined that the special relationship rule is applicable to the instant case, the Court must next consider the issue of whether under Nebraska law the relationship between a psychotherapist and his patient is sufficient to justify imposition of an affirmative duty on the therapist to control the conduct of his patients. Although the Nebraska Supreme Court has never addressed this issue, this Court is of the opinion that the Nebraska court would find that the therapist-patient relationship gives rise to an affirmative duty for the benefit of third persons.

The existence of this duty is suggested by a passage from a Nebraska case involving the physician-patient privilege. In *Simonsen v. Swenson*, 104 Neb. 224, 177 N.W. 831 (1920), the court held that a doctor was not liable to his patient for disclosing the patient's confidence, when the disclosure was necessary to prevent the spread of a contagious disease. This privilege was based on the fact that "[t]he doctor's duty does not necessarily end with the patient, for on the other hand, the malady of his patient may be such that a duty may be owing to the public and, in some cases, to other particular individuals." *Simonsen v. Swenson, supra*, 104 Neb. at 227, 177 N.W. at 832. From this passage, it may be inferred that under Nebraska law the physician-patient relationship imposes affirmative duties on the physician for the benefit of persons other than the patient. This inference is buttressed by the fact that other jurisdictions have found that a physician owes a duty to persons who may be harmed by their patient's condition. *Freese v. Lemmon*, 210 N.W.2d 576 (Iowa 1973); *Kaiser v. Suburban Transportation System*, 65 Wash.2d 461, 398 P.2d 14 (1965), *modified* 401 P.2d 350 (1965). *See Seibel v. City & County of Honolulu, supra*, 602 P.2d at 538.

Despite this precedent imposing affirmative duties on physicians generally, the United States argues that various policy considerations counsel against the imposition of liability on psychotherapists. The primary thrust of the argument of the United States is that a therapist should not be held liable for the violent outbursts of his patients, because a therapist cannot accurately predict which patients pose a danger to other persons. To support this contention, the United States has submitted to the Court various studies which purport to prove that dangerousness cannot be predicted. The Court, however, is not persuaded that the inherent difficulties in predicting dangerousness justify denying the injured party relief regardless of the circumstances.

The argument of the United States ignores the fact that psychiatrists and mental hospitals have been held liable for failing to predict the dangerous propensities of their patients. *See Hicks v. United States*, 511 F.2d 407, 415–17 (D.C.Cir.1975); *Eanes v. United States*, 407 F.2d 823 (4th Cir. 1969); *White v. United States*, 317 F.2d 13, 17 (4th Cir. 1963); *Johnson v. United States*, 409 F.Supp. 1283, 1292–94 (M.D.Fla.1976), *rev'd on other grounds* 576 F.2d 606 (5th Cir. 1978); *Greenberg v. Barbour*, 322 F.Supp. 745 (E.D.Pa.1971); *Merchants National Bank & Trust Co. v. United States*, 272 F.Supp. 409, 417–19 (D.N.D.1967); *Baker v. United States*, 226 F.Supp. 129, 132–35 (S.D.Ia.1964), *aff'd* 343 F.2d 222 (8th Cir. 1965). Moreover, the Nebraska Supreme Court has imposed on hospitals a duty to guard against their patients' dangerous mental conditions when the condition is discoverable by the exercise of reasonable care. *Foley v. Bishop Clarkson Memorial Hospital*, 185 Neb. 89, 94–95, 173 N.W.2d 881, 884–85 (1970). *See Skar v. City of Lincoln, Neb.*, 599 F.2d 253, 258 n.5 (8th Cir. 1979). These cases from Nebraska and other jurisdictions clearly show that the difficulty in predicting dangerousness has not caused the Nebraska Supreme Court or other courts to deny the existence of a cause of action for the negligence of the doctor or hospital.

■ The Court recognizes that it may be difficult for medical professionals to predict whether a particular mental patient may pose a danger to himself or others. This factor alone, however, does not justify barring recovery in all situations. The standard of care for health professionals adequately takes into account the difficult nature of the problem facing psychotherapists.

> Generalizations must be avoided as much as possible in psychiatry. Negligence cannot be imputed to the Hospital merely because of a mistake. A claim of negligence must be considered in light of the elusive qualities of mental disorders and the difficulty of analyzing and evaluating them. Exactitude is often impossible. The Supreme Court has recently noted " 'the uncertainty of diagnosis in this field and the tentativeness of professional judgment.' *Greenwood v. United States*, 350 U.S. 366, 375, 76 S.Ct. 410, 100 L.Ed. 412 (1956)." *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Error and uncertainty considered alone must often be accepted without labeling them negligence.

> \*    \*    \*    \*    \*    \*

> The standard to be applied, however, must take into consideration the uncertainty which accompanies psychiatric analysis. In that area, as we have suggested, negligence may not ordinarily be found short of serious error or mistake, and not necessarily when the error or mistake is serious. The concept of "due care" in appraising psychiatric problems, assuming proper procedures are followed, must take account of the difficulty often inevitable in definitive diagnosis. *Hicks v. United States, supra*, 511 F.2d at 415, 417.

See *Tarasoff v. The Regents of the University of California, supra*, 17 Cal.3d at 436–37, 551 P.2d at 344–45, 131 Cal.Rptr. at 24–25; *McIntosh v. Milano*, 168 N.J.Super. at 481–83, 403 A.2d at 507–08. Under this standard, a therapist who uses the proper psychiatric procedures is not negligent even if his diagnosis may have been incorrect. Given this protection, the Court is of the opinion that the difficulty in predicting dangerousness does not justify denying recovery in all cases.

A second policy argument raised by the United States involves the goal of placing mental patients in the least restrictive environment. The United States contends that imposing liability on a psychotherapist would conflict with this goal because therapists would attempt to protect themselves from liability by placing their patients in a restrictive environment. This argument misinterprets the nature of the duty imposed upon the therapist. The recognition of this duty does not make the psychotherapist liable for any harm caused by his patient, but rather makes him liable only when his negligent treatment of the patient caused the injury in question.

> Modern psychiatry has recognized the importance of making every reasonable effort to return a patient to an active and productive life. Thus, the patient is encouraged to develop his self-confidence by adjusting to the demands of everyday existence. In this view, mental hospitals are not seen as dumping grounds for all persons whose behavior society might find inconvenient or offensive; institutionalization is the exception, not the rule, and is called for only when a paramount therapeutic interest or the protection of society leaves no choice. . . . [M]odern psychiatric practice does not require a patient to be isolated from normal human activities until every possible danger has passed. Because of the virtual impossibility of predicting dangerousness, such an approach would necessarily lead to prolonged incarceration for many patients who could become useful members of society. It has also been made clear to the Court that constant supervision and restriction will often tend to promote the very disorders they are designed to control. . . . On the other hand, despite the therapeutic benefits of this "open door" approach, the practice admittedly entails a higher potential of danger both for the patient and for those with whom he comes in contact. In deciding the extent to which a patient should be

released from restrictions, the treating physician must exercise his judgment and balance the various therapeutic considerations together with the possible dangers. *Johnson v. United States, supra,* 409 F.Supp. at 1293.

See *Eanes v. United States, supra,* 407 F.2d at 824. Thus, despite the defendant's protests to the contrary, a psychotherapist is not subject to liability for placing his patient in a less restrictive environment, so long as he uses due care in assessing the risks of such a placement. This duty is no greater than the duty already owing to the patient.

The United States' final challenge to recognition of a therapist's duty to protect third persons concerns the nature of the protection owed. The United States contends that assuming a therapist owes a duty to third persons, this duty is limited to warning potential victims of his patient's dangerous propensities. This contention is based on the holding in *Tarasoff.*

Although the *Tarasoff* decision concerned only the issue of a therapist's duty to warn, the language of the case makes clear that the nature of the precautions which must be taken depends on the circumstances.

> When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.
>
> \*      \*      \*      \*      \*      \*

While the discharge of this duty of due care will necessarily vary with the facts of each case, in each instance the adequacy of the therapist's conduct must be measured against the traditional negligence standard of the rendition of reasonable care under the circumstances.

*Tarasoff v. The Regents of the University of California, supra,* 17 Cal.3d at 430–39, 551 P.2d at 340, 345, 131 Cal.Rptr. at 20–25.[6]

The Court is of the opinion that the approach suggested by this passage from *Tarasoff* is appropriate. It is not unfair to require the psychotherapist to take those precautions which would be taken by a reasonable therapist under similar circumstances. Moreover, this Court refuses to rule as a matter of law that a reasonable therapist would never be required to take precautions other than warnings, or that there is never a duty to attempt to detain a patient. These issues can only be determined after the parties have had an opportunity to prove what precautions a reasonable psychotherapist would take under the circumstances in issue here.

To summarize, this Court is of the opinion that under Nebraska law the relationship between a psychotherapist and his patient gives rise to an affirmative duty for the benefit of third persons. This duty requires that the therapist initiate whatever precautions are reasonably necessary to protect potential victims of his patient. This duty arises only when, in accordance with the standards of his profession, the therapist knows or should know that his patient's dangerous propensities present an unreasonable risk of harm to others.

The Court's recognition of this duty does not resolve all the issues raised by the defendant's motion. Under Nebraska law, a

---

**6.** In *McIntosh v. Milano,* the New Jersey court also took a broad approach to the problem:

> [T]his court holds that a psychiatrist or therapist may have a duty to take whatever steps are reasonably necessary to protect an intended or potential victim of his patient when he determines, or should determine, in the appropriate factual setting and in accordance with the standards of his profession established at trial, that the patient is or may present a probability of danger to that person.
>
> *McIntosh v. Milano, supra,* 168 N.J.Super. at 488 491, 403 A.2d at 511 12.

person is not liable for his negligence unless he owed a duty to the person injured. *See Geer Company v. Hall County Airport*, 193 Neb. 17, 24–25, 225 N.W.2d 32, 36–37 (1975). Relying on the *Tarasoff* decision, the defendant argues that a psychotherapist only owes a duty to those persons whom he can readily identify as potential victims of his patient. If this contention is correct, the Court would have to dismiss the complaints, since it appears that the V.A. and its employees were unaware of the Liparis' existence until after the shooting. Thus, the Court must determine whether the duty discussed above was one which the agents of the United States owed to the Liparis.

Although the *Tarasoff* decision did not emphasize the identifiability of the victim in its analysis,[7] subsequent California decisions have limited the scope of the therapist's duty to identifiable victims. *See Mavroudis v. Superior Court for the County of San Mateo*, 102 Cal.App.3d 594, 599, 162 Cal.Rptr. 724, 729 (1980). However, other cases involving a physician's liability to third persons have not required as a precondition to recovery that the plaintiff be an identifiable victim of the patient's condition. Rather, these courts appear to have required only that the doctor reasonably foresee that the risk engendered by his patient's condition would endanger other persons.[8] *Freese v. Lemmon, supra*, 210 N.W.2d at 581 (Uhlenhopp, J., concurring); *Kaiser v. Suburban Transportation System, supra*, 65 Wash.2d 461, 398 P.2d at 14.

The Court is of the opinion that the Nebraska Supreme Court would adopt this latter approach and limit the therapist's liability to those persons foreseeably endangered by the V.A.'s negligent conduct.[9] *See generally Schmidt v. Orton*, 190 Neb. 257, 259, 207 N.W.2d 390, 392 (1973) (golfer owes duty to those who golfer can reasonably anticipate would be endangered by ball's flight); *Gillotte v. Omaha Public Power District*, 185 Neb. 296, 302, 176 N.W.2d 24, 28 (1970) (person liable for negligence only if harm to another is reasonably foreseeable); *Lock v. Packard Flying Service, Inc.*, 185 Neb. 71, 73–74, 173 N.W.2d 516, 519 (1970) (person liable only if he fails to avert risk to others which should be reasonably apprehended); *Farmer v. S. M. S. Trucking Company*, 180 Neb. 779, 782, 145 N.W.2d 922, 924 (1966). These cases illustrate the importance of foreseeability in defining the scope of a person's duty to exercise due care. Thus, the plaintiffs and third-party plaintiff must prove that the risk created by the V.A.'s negligence was

---

**7.** *See Tarasoff v. The Regents of the University of California, supra*, 17 Cal.3d 439, 551 P.2d at 345 n. 11, 131 Cal.Rptr. at 25 n. 11.

**8.** *See generally Semler v. Psychiatric Institute of Washington, D. C.*, 538 F.2d 121, 124 (4th Cir. 1976), *cert. denied* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90 (1976) (defendant's duty depends on foreseeability of harm to public including plaintiff); *Williams v. United States*, 450 F.Supp. 1040, 1045 (D.S.D.1978) (hospital liable for negligent release of mental patient to all those harmed); *Grim v. Arizona Board of Pardons & Paroles*, 115 Ariz. 260, 267, 564 P.2d 1227, 1234 (1977) (parole board liable for negligent release of inmate to individual member of general public injured by inmate); *Missouri K. & T. Ry. Co. v. Wood*, 95 Tex. 223, 66 S.W. 449, 450–51 (1922) (custodian of person with contagious disease liable for escape of patient to individual members of general public infected by patient).

**9.** With respect to a manufacturer's liability for negligence, the Nebraska Supreme Court has recently held:

"In principle, a manufacturer or other person owning or controlling a thing that is dangerous in its nature or is in a dangerous condition, either to his knowledge or as a result of his want of reasonable care in manufacture or inspection, who deals with or disposes of that thing in a way that he foresees or in the exercise of reasonable care· *ought to foresee will probably carry that thing into contact with some person, known or·unknown*, who will probably be ignorant of the danger, owes *a legal duty to every such person*, to use reasonable care to prevent injury to him. * * * In the application of the principle it is immaterial whether or not the conduct of a defendant amounted to a breach of the contract between him and the immediate buyer from him. *The duty is not created by contract, but is an instance of the general human duty not to injure another through disregard of his safety*." *Colvin v. Powell & Co., Inc.*, 163 Neb. 112, 77 N.W.2d 900. (emphasis supplied). *Hancock v. Paccar, Inc.*, 204 Neb. 468, 473, 283 N.W.2d 25, 32 (1979).

such that, under the circumstances, the V.A.'s employees could have reasonably foreseen an unreasonable risk of harm to the Liparis or a class of persons of which the Liparis were members. Restatement (Second) of Torts § 281, Comment c. To satisfy this standard, the plaintiff need not prove that the V.A.'s employees knew the identity of the plaintiff or her decedent.

### Discretionary Function Exception

■ The discretionary function exception to the Federal Tort Claims Act is designed to bar tort litigation challenging governmental decisions which are founded on a balancing of competing policy considerations. Although a lawsuit may challenge a government official's exercise of judgment, this fact alone does not necessarily mean that the suit will be barred by the discretionary function exception. Rather, a court must consider a variety of factors to determine whether the judgment in issue called for the weighing of policy considerations. *Griffin v. United States*, 500 F.2d 1059, 1063–64 (3rd Cir. 1974).

■ The gravamen of the complaints of the plaintiffs and the third-party plaintiff is that the V.A.'s employees were negligent in failing to detain Cribbs, a patient whom they should have known posed a danger to others. The decision not to detain Cribbs was presumably based on a psychotherapist's professional judgment that Cribbs' condition did not necessitate detention. This decision is not different in kind from the decision which any therapist in private practice would have had to make in similar circumstances. Thus, the judgment of the United States' therapist can be readily assessed by the Court's use of the tort standard applicable to professional negligence. In applying the standard, the Court will not be reviewing the reasonableness of the V.A.'s policies, but will be only assessing the reasonableness of the therapist's evaluation of Cribbs. It is clear that "[t]he fact that judgments of government officials occur in areas requiring professional expert evaluation does not necessarily remove those judgments from the examination of courts by classifying them as discretionary functions under the act." *Hendry v. United States*, 418 F.2d 774, 783 (2d Cir. 1969). Finally, it should also be noted that the complexity of the problem facing the decision maker does not affect the Court's determination of whether the decision involves a discretionary function. All of these factors tend to suggest that the therapist's decision not to detain Cribbs did not involve a balancing of policy considerations, and thus was not a discretionary function. *See Griffin v. United States, supra*, 500 F.2d at 1063–67; *Hendry v. United States, supra*, 418 F.2d at 782–83.[10]

■ Another factor weighing against application of the discretionary function exception is that the parties' complaints do not challenge the V.A.'s rules or policies, but rather challenge the V.A.'s negligent implementation of its rules. Although the development of an agency's rules and regulations is a discretionary function, it is generally recognized that the implementation of these rules does not involve policy judgments within the discretionary function exception. This rule has been repeatedly applied to decisions made by mental health professionals. *See White v. United States, supra*, 317 F.2d at 17–18 (4th Cir. 1963); *Fair v. United States*, 234 F.2d 288, 294

---

10. The following passage from the *Hendry* opinion illustrates the distinction between professionals exercising a discretionary function and those merely exercising their professional judgment:

[S]tate tort standards cannot adequately control those governmental decisions in which, to be effective, the decisionmaker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness. Of course the courts may inquire into whether an engineer's judgment in applying the rules of his craft was reasonable, but if the engineer is a government official who must, apart from questions of engineering efficiency and safety, determine whether a particular program of production is a desirable program, the courts cannot doubt the reasonableness of his evaluation of the public interest.

*Hendry v. United States, supra*, 418 F.2d at 783.

(1956); *Merchants National Bank & Trust Co. v. United States, supra,* 272 F.Supp. at 417–18; *Baker v. United States, supra,* 226 F.Supp. at 135. *See also Hendry v. United States, supra,* 418 F.2d at 782. In each of these cases, the United States decision maker directed that a patient be released or placed in a less restrictive environment. The courts held that these decisions did not fall within the discretionary function exception because the decisions were merely the implementation of an already formulated policy.

In the instant case, the parties' complaints do not challenge the V.A.'s policy on the detention of potentially dangerous patients. Rather, this case involves a claim that the implementation of this policy was negligently executed. Since the complaints challenge the implementation of the V.A.'s rules, it would appear that the decision concerning Cribbs' detention would not be a discretionary function.

The preceding discussion demonstrates that the allegations in the parties' complaints do not fall within the discretionary function exception to the Federal Tort Claims Act. The complaints do not challenge a governmental decision which involved the consideration of public policy. The parties' complaints, therefore, shall not be dismissed for alleging a cause of action barred by the discretionary function exception.

### Sears' Claim for Indemnity

■ Under Nebraska law, indemnity is available only when the defendant's liability to the plaintiff is based on constructive or technical fault, as opposed to actual wrongdoing. *Danny's Construction Co. v. Havens Steel Co.,* 437 F.Supp. 91, 93 (D.Neb.1977). Sears contends that its liability to the plaintiff, if any, would be based on a technical fault, violation of statute, and would not be based on any actual wrongdoing on its part. Sears thus concludes it is entitled to indemnity. The Court disagrees.

■ The plaintiffs' complaint alleges that Sears was negligent in selling a gun to Ulysses Cribbs. Proof that Sears violated the federal Gun Control Act does not establish negligence *per se.* A violation of a statute is merely evidence of negligence which is considered by the trier of fact with all the other evidence. *See Florida v. Farlee,* 201 Neb. 39, 266 N.W.2d 204 (1978); *Hurlbut v. Landgren,* 200 Neb. 413, 264 N.W.2d 174 (1978). Thus, in order for Sears to be liable to the plaintiffs, the jury must find, based on all the evidence, that Sears was in fact negligent.

■ In a situation such as this, indemnity is not appropriate. Sears is either blameless, in which case no indemnity is required, or it is liable for affirmative misconduct, in which case it must bear at least part of the burden for the plaintiffs' losses.

### Sears' Claim for Contribution

■ Nebraska recognizes the right of contribution among tortfeasors who act in concert or whose negligent acts combine to concurrently cause the same injury. The United States contends that Sears is not entitled to contribution because the negligent acts of Sears and the United States were not the concurrent cause of the Liparis' injuries. This contention is without merit.

The factual setting of the instant case is indistinguishable from *Reese v. AMF-Whitely,* 420 F.Supp. 985 (D.Neb.1976). In *Reese,* the plaintiff's son was injured by gym equipment manufactured and designed by the defendant. The plaintiff alleged that the defendant negligently manufactured the equipment. The defendant sought to implead Keith Blackwell, claiming a right to contribution. Blackwell allegedly was negligent in installing the equipment on which the plaintiff's son was injured. The Court held that the negligent acts of Blackwell and the defendant, though separate in time, were the concurrent cause of the same injury to the son. Thus, contribution was appropriate. *Id.* at 988.

In the instant case, Sears allegedly was negligent when it sold Cribbs a gun in September, 1977. The United States al-

legedly was negligent when it later failed to detain Cribbs. These two acts of negligence combined to cause the plaintiff's injuries and her husband's death. As in *Reese*, these negligent acts, though separate in time caused the same injury. Thus, Sears may seek contribution from the United States.

An order will be filed contemporaneously with this Memorandum Opinion.