**Bert S. SAKUDA, et al., Plaintiffs,**

v.

**KYODOGUMI CO. LTD., et al., Defendants.**

**Civ. No. 81–0097.**

United States District Court,
D. Hawaii.

Jan. 27, 1983.

---

**6.** 14 Callaghan's Michigan Civil Jurisprudence *Insurance* § 86 (1960), *citing Drogula*.

Paul F. Cronin, Honolulu, Hawaii, for plaintiffs.

David W. Proudfoot, David M. Louie, Case, Kay & Lynch, Honolulu, Hawaii, for defendant Kyodogumi Co., Ltd.

Robert Kimura, Honolulu, Hawaii, for defendants Seaway Carrier Corp. and Ocean Towage and Salvage Corp.

Dan Wirth, pro se.

John R. Lacy, Honolulu, Hawaii, for defendant Lloyd's of London.

George W. Ashford, Jr., Barry M. Kurren, Honolulu, Hawaii, for defendant U.S. Salvage Ass'n, Inc.

Richard J. Kowen, Honolulu, Hawaii, for defendant Davies Marine Agencies, Inc.

## DECISION AND ORDER

FONG, District Judge.

The parties do not dispute the essential facts of this case. This case involved the "STAR K", a vessel which had previously been extensively damaged, and was being towed from Oregon to Taiwan to be sold for scrap. The STAR K was being towed by an oceangoing tug, the "SUMI MARU", owned by defendant Kyodogumi Co., Ltd. ("Kyodogumi").

While enroute to Taiwan, the STAR K stopped in Hilo, Hawaii for temporary repairs and the loading of additional scrap metal into its hull. While in Hilo, the STAR K also took on a riding crew.

Just prior to the STAR K's arrival in Hilo, Defendant Davies Marine Agencies, Inc. ("Davies") received a request from the owners of the STAR K to act as the tow's husbandry agent in Hilo Harbor. Davies, who is engaged in the business of serving as

agent for ships arriving in Hawaii ports for the purpose of arranging their service or husbanding needs (e.g., the provision of food, water & fuel), declined to accept the appointment, apparently for the reason that there existed potential problems and unacceptable responsibilities connected with the STAR K.

Davies also refused to act as the husbanding agent in Hilo for only the SUMI MARU, because Davies would have had to assume responsibility for both the tug and the tow, and the tug for various reasons could not be separated from the tow while in Hilo Harbor.

On or about February 20, 1980, while the STAR K was still in Hilo Harbor, Kent H. Bowman, the President of Davies, received a telephone call from a Mr. Don Winkler of Los Angeles, California. Mr. Winkler represented to Mr. Bowman that the STAR K was insured by certain underwriters at Lloyds of London ("Lloyds") and was about to be involved in a $1.6 million fraud claim brought by a Dan Wirth, who is alleged to be one of the owners and operators of the STAR K. Mr. Winkler further stated that, in his opinion, the STAR K would never complete its journey to Taiwan.

Mr. Bowman reported this information to the Vice President and Controller of Davies, who spoke to Mr. Winkler himself concerning the allegations. Davies shortly thereafter reported this information to the Corporation of Lloyds, which provides facilities and intelligence information to the Lloyds insurance community. Davies manages an agency held by Theo. H. Davies & Co., its parent company, for the Corporation of Lloyds.

The SUMI MARU was required to go to Honolulu to obtain fuel not available in Hilo, and Kyodogumi again requested that Davies act as a service or husbanding agent for the SUMI MARU and for the STAR K. Davies, apparently in consideration of a longstanding relationship with Kyodogumi, agreed to act as the husbanding agent of the SUMI MARU only, and explicitly refused to serve as the agent for the STAR K.

When the tug and tow arrived at Oahu, the STAR K remained outside the harbor and was met by another tug while the SUMI MARU went into Honolulu Harbor alone for fuel and water. After being thus serviced, the SUMI MARU rejoined the STAR K and the tug and tow continued on their journey to Taiwan.

Approximately three weeks later, the STAR K began to take on water, and before its riding crew was able to abandon ship, the hulk sank. Two members of the riding crew were not found and are assumed to have been lost at sea.

The instant action for wrongful death is brought by the administrator and parents of one of the decedents against Davies, among others, alleging that Davies negligently serviced the STAR K, and that Davies failed to warn the decedent of the potential danger to the STAR K. Liability is founded on the Jones Act, 46 U.S.C. § 688, "general maritime law", and the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.*

Davies has now filed a motion for summary judgment, arguing that it did not owe any legal duty, and is thus not liable, to the plaintiff. Kyodogumi, who has filed a cross complaint against Davies, opposes the instant motion. Plaintiffs, while not filing any opposing memoranda, have joined in the opposition filed by Kyodogumi.

At the outset, it is undisputed that Davies did not service the STAR K. It is clear, therefore, that any cause of action based on the negligent servicing of the tug cannot be sustained, and plaintiffs do not argue otherwise. Davies' Motion for Summary Judgment is granted as to this cause of action.

Plaintiff's remaining cause of action poses a more difficult problem. While Kyodogumi acknowledges the general common law rule that "one person owes no duty to control the conduct of another, nor to warn those endangered by such conduct", *see, Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 444, 131 Cal.Rptr. 14, 29, 551 P.2d 334, 349 (1976), it also argues that there is an exception to this

rule in cases where the defendant stands in a "special relationship" either to the person whose conduct needs to be controlled, or to the foreseeable victim of that conduct. Kyodogumi further argues that Davies, as the husbanding agent of the tug SUMI MARU, had a special relationship with the tug and hence to its tow, the STAR K.

■ Kyodogumi cites to three cases to support its position: *Caldwell v. Bechtel, Inc.,* 631 F.2d 989 (D.C.Cir.1980); *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 444, 131 Cal.Rptr. 14, 29, 551 P.2d 334, 349 (1976); and *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb. 1980). These cases are not applicable to the instant case.[1] Even when the cases are reasonably construed in the broadest possible way, a duty to third persons, in this case the members of the tow, absent a special relationship with those persons, can arise only when the following elements exist:

1. The third person is a foreseeable victim or within a class of foreseeable victims.

2. The defendant has knowledge of a specific danger to the victim.

3. The defendant possesses special skills which would enable it to recognize the danger.

4. The defendant stands in some professional relationship to the dangerous person or condition which arises from defendant's special skills.

5. The defendant has some measure of control over the dangerous person or condition, which the defendant in his professional capacity could exercise to prevent the harm.

*Caldwell v. Bechtel, Inc.,* 631 F.2d 989 (D.C. Cir.1980) involved a consulting company who contracted with a metropolitan transit authority to provide safety engineering services in connection with a construction project. The consulting company was found to have had a "special relationship" to the workers on the job site (who were employed by other contractors) such as to impose a duty on the company to take reasonable steps to protect them from the foreseeable risk of harm to their health. This "special relationship" was premised upon the existence of a contractual duty between the consulting company and the transit authority, and derived from its status as the safety engineer on the site. In addition, the consulting company was "fully possessed" of the power to protect the workers on the site, since it had the ability to inspect for safety violations and to stop work on the project, and it possessed the special skills of one engaged in the profession of safety engineering.

Finally, in *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb.1980), the court, applying Nebraska law, relied upon § 315 of the Restatement (Second) of Torts and on cases such as the *Tarasoff* case to hold that a therapist has a duty to initiate whatever precautions are reasonably necessary to protect potential victims of his patient, and arises only when the therapist knows or should know that his patient's dangerous propensities pose an unreasonable risk of harm to others. The court concluded that the therapist may be liable to those persons foreseeably endangered by the therapist's negligent failure to detain or commit a dangerous patient.

1. In the *Tarasoff* case, *supra,* the Supreme Court of California held that a psychologist had a duty to warn the victim of the intention of his patient to kill the victim. The court recognized the general common law proposition that a person has no duty to control the conduct of another nor to warn those endangered by such conduct, even if the harm is foreseeable. It observed, however, that an exception to the rule existed in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct.

The court found there to be a special relationship between the defendant therapist and his patient which, when combined with the therapist's knowledge that his patient poses a serious danger of violence to others, gives rise to a duty to "exercise reasonable care to protect the foreseeable victim of that danger", which duty may include the duty to warn the victim. 17 Cal.3d at 439, 131 Cal.Rptr. 14, 551 P.2d 334.

The court based its conclusion upon section 315 of the Restatement (Second) of Torts, which imposed a duty of care on an actor arising either from a special relation between the actor and a third person which imposes a duty on the actor to control the third person's conduct, or a special relation between the actor and the other which gives to the other a right of protection. Since there was no relation "between the actor and the other" in that case, the court implicitly premised its holding upon the existence of a duty (and hence the power) on the part of the defendant to control his patient. The power of control in that case was the defendant's ability to seek a civil commitment of his patient pursuant to California law.

Davies here does not meet the above requirements. The only relevant thing in this action to which Davies had any relationship at all would be the SUMI MARU, and perhaps its crew. Assuming for the moment that either the tug or its crew were somehow found to be the cause of the sinking of the STAR K, the record is devoid of any showing or allegation that Davies had any knowledge of any specific danger to the STAR K, or that it had any control over the tug or its crew. No allegation is made that Davies had the power to prevent the SUMI MARU from continuing on its journey or to otherwise prevent the tragedy giving rise to this action.

Moreover, if Davies had any skills at all, it would certainly not be such skills as would enable it to recognize the danger in this case. Davies' skills were in the provision of supplies and services to vessels, and any recognition of danger would have been simply as a layman. No case cited by Kyodogumi or found by this court has imposed liability upon laymen for failure to warn or protect, absent a special relation to the person to be *protected.*

Further, if the court were to impose upon Davies a duty to warn a third person in this case, it would follow that virtually any relationship between two persons would give rise to this duty. The "special relationship" doctrine would be transformed from one of limited to almost universal application, and this court declines to turn the doctrine on its head and extend it to this extreme.

Accordingly, for the reasons stated above, Davies' Motion for summary judgment is hereby GRANTED. In addition, the court expressly finds that there is no just reason for delay and directs the entry of judgment in favor of Davies.