Diane HOOT, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 84–C–664.

United States District Court,
D. Colorado.

Dec. 17, 1984.

Ronald G. Crowder, Barton & Crowder, Colorado Springs, Colo., for plaintiff.

James W. Winchester, Asst. U.S. Atty., Denver, Colo., for defendant.

ORDER

CARRIGAN, District Judge.

Diane Hoot filed this action under the Federal Tort Claims Act, 28 U.S.C. 2671 *et seq.* seeking damages for personal injuries. The United States has moved to dismiss, asserting that the case is excluded from the Act's coverage by § 2680(h), the provision that excludes assault and battery cases. The parties have briefed the issues thoroughly, and oral argument would not assist the decision process.

I. *Background.*

Well pleaded allegations in a plaintiff's complaint must be taken as true in deciding a motion to dismiss. The facts as stated in this order are those alleged in the complaint; they are taken as true only for purposes of this motion.

On October 25, 1980, one Firth, a soldier in the United States Army stationed at Fort Carson, Colorado, entered Hoot's Colorado Springs apartment while she was out. When Hoot returned, Firth beat her, threatened her with a deadly weapon, held her captive, and strangled her into unconsciousness.

Prior to this incident, Firth repeatedly had sought mental health treatment. Initially, he had asked for such treatment at a civilian institution, the Pike's Peak Mental Health Center, but was denied treatment there because of his military status. Employees of that center encouraged Firth to seek help through the Army.

Firth next requested and received an appointment with Army Community Services, the organization through which soldiers receive psychiatric care. An unknown private screened Firth and denied him access to a doctor. Thereafter his mental condition apparently grew worse, and at one point he irrationally fired a shot through the floor of a friend's car. On another occasion, while he was on duty, Firth threatened a fellow soldier with an automatic rifle. His superiors learned of the latter incident and were sufficiently concerned that they limited his access to weapons.

In September or early October, 1980, Firth asked his squad leader's permission to seek psychiatric help at Army Community Services. The squad leader refused to allow time off duty for that purpose. Firth's platoon sergeant and his commander also refused his requests for treatment.

Plaintiff Hoot claims that the Army's negligence in refusing to provide Firth mental health treatment proximately caused her injuries. She sues the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* In its motion to dismiss, the United States argues that Hoot's claim arises from an intentional tort and therefore is not covered by the Tort Claims Act. *See* 28 U.S.C. § 2680(h). Jurisdiction is based on 28 U.S.C. § 1346(b).

## II. *Discussion.*

The United States contends that the Tenth Circuit opinion in *Naisbitt v. United States,* 611 F.2d 1350 (1980) controls. In *Naisbitt* two off-duty airmen committed multiple batteries, rapes and murders against the plaintiffs and their decedents. Plaintiffs there claimed that the United States was negligent in failing to supervise the two airmen. After reviewing the cases that had interpreted 28 U.S.C. § 2680(h), the provision excepting traditional intentional torts from the Tort Claims Act immunity waiver, the court concluded that a "strong thread running through most of these cases is that which recognizes the immunity of the government where the assailant is an employee of the government."

*Id.* at 1356. The court reasoned that where the principal basis for asserting liability against the government is the fact that the intentional tortfeasor is a government employee, the government is immune from suit. Thus, sovereign immunity bars an action against the United States if the plaintiff is merely attempting to impute the intentional acts of government employees to the government.

The result in *Naisbitt* might have been different had there been any specific negligence alleged against supervisory air force personnel. Rather *Naisbitt* involved only generalized allegations of negligent failure to supervise airmen. There was no allegation there that the supervisors knew or should have known that the specific two airmen were more dangerous than other airmen. A close reading of *Naisbitt* makes clear that if there had been such specific negligence related to particular airmen and creating a foreseeable risk of the kind of harm that occurred, the result would probably have been different. Rather *Naisbitt* reads as an effort by the plaintiffs to bootstrap past § 2680(h) by broadly alleging supervisory negligence in an unfocused form without indicating any direct causal relation—or forseeability—of which airmen might cause harm, or what kind of harm they might cause. Judge Doyle's opinion in *Naisbitt* noted that the airmen's attack "was, as a matter of law, an intervening force of such great magnitude that it rendered the negligence of the government in failing to control the assailants insignificant in comparison." *Id.* at 1356.

Thus the actual holding of the case was narrow: the intentional tort exception was extended to negligence of supervisory employees only where their alleged negligence was but a slight or minimal factor in bringing about the plaintiff's injury and the assaultive behavior was an intervening cause. In holding the airmen's crimes were intervening forces, *Naisbitt* necessarily held by implication that those crimes were unforseeable: a forseeable consequence cannot be an intervening or superceding force where the negligent de-

fendant has created or increased the forseeable risk of harm through intervention of that force. Restatement, Torts (2d) § 442(A); Prosser Torts 272 (4th ed. 1971).

■ Thus, Hoot's claim against the United States is easily distinguishable from the plaintiffs' claims in *Naisbitt*. There, even though the plaintiffs phrased their claims in negligence terms, they were actually attempting to impute the airmen's intentional acts to their supervisors who had almost no causal role in the injuries. Hoot, however, asserts a plausible, independent negligence claim against the supervisors themselves, claiming it was *their* negligence which really caused the injury. Here the specific allegations of repeated negligent refusals to provide treatment to a demonstrably violent, potentially dangerous, emotionally ill serviceman, whose army status rendered civilian mental health care unavailable, go well beyond the mere generalized claim of failure to supervise airmen on leave asserted in *Naisbitt.*

Thus the actual tort on which Hoot's claim is based is *not* the ultimate assault, but the *negligence* of the supervising personnel in denying needed mental health care. She does not merely seek to hold military supervisory personnel vicariously liable for an assault by their underling; rather the *negligence* of the supervisors *themselves* is the tort for which she seeks damages. Nor is there here any intervening cause, as in *Naisbitt*, for here the kind of harm brought about by the negligence was clearly foreseeable.

Moreover, the act giving rise to this suit occurred while Firth was off duty, and thus the rationale behind governmental immunity should have less force. Had Firth been a cannonball negligently loosed to roll willy-nilly down the street and ultimately explode injuring whatever bystander was near, the government would be liable for its employee's negligence in loosing it. The negligence is not that of the cannonball in exploding, but of the Army employee in not restraining it.

If the instant complaint be true, Firth was loosed on an unsuspecting community by the negligence of government employees who had repeated warnings that he might explode and injure someone. It is clear causal negligence, not Firth's assault, for which a remedy is here sought. Firth's act but furnished the injury element to an otherwise complete tort.

The United States also relies on two cases from other circuits. In *Hughes v. United States*, 662 F.2d 219 (4th Cir.1981), a mailman sexually assaulted the plaintiff. The mailman had been arrested and treated five years earlier for a similar offense. The plaintiff sued the United States for its failure to discharge the mailman. The Fourth Circuit upheld the district court's decision holding the United States immune under § 2680(h) from suits arising from intentional torts. *Hughes* is a brief and conclusory opinion of little precedential value here.

In *United States v. Shively*, 345 F.2d 294 (5th Cir.1965), an army sergeant killed his wife with a pistol he had received from the local army base without proper authorization. The court held that the sergeant's intentional tort was a supervening cause of his wife's death and relieved the Army of liability. *Shively* is not helpful here because the court there relied on Georgia's state law governing intervening cause. As above explained, there was no intervening cause in the instant case.

In opposition to the defendant's motion to dismiss, Hoot relies on three cases holding the government liable to third parties for negligent supervision of soldiers undergoing psychiatric care. *Underwood v. United States*, 356 F.2d 92 (5th Cir.1966); *Merchant's National Bank v. United States*, 272 F.Supp. 409 (D.N.D.1967); *Lipari v. Sears Roebuck & Co.*, 497 F.Supp. 185 (D.Neb.1980). Unlike the present case, these cases involved patients already receiving psychiatric treatment. Nonetheless, taking the allegations in Hoot's complaint as true, I conclude that Hoot has asserted sufficient claims of negligence against the United States to avoid the government's sovereign immunity defense against intentional torts.

Accordingly,

IT IS ORDERED that the defendant's motion to dismiss is denied.